715 F.2d 78
 114 L.R.R.M. (BNA) 2134, 114 L.R.R.M. (BNA) 3123,
98 Lab.Cas. P 10,371
 Steve F. PERICHAK
v.
INTERNATIONAL UNION OF ELECTRICAL RADIO AND MACHINE WORKERS,
LOCAL 601, AFL-CIO; and Westinghouse Electric
Corporation.
Appeal of WESTINGHOUSE ELECTRIC CORPORATION.
 No. 82-5490.
 United States Court of Appeals,
Third Circuit.
 Submitted under Third Circuit Rule 12(6)
 March 18, 1983.
Decided Aug. 11, 1983.
 
 Lynn E. Wagner, Vasilis C. Katsafanas, Stephen C. Kunkle, Berkman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, Pa., for appellant.
 Dante G. Bertani, Bertani & Myers, Greensburg, Pa., for appellee.
 Before ADAMS and GARTH, Circuit Judges and ACKERMAN, District Judge.*
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 Each party to a lawsuit ordinarily bears its own attorney's fees unless a statute or decisional authority provides otherwise. This principle is known as the American Rule. See Hensley v. Eckerhart, --- U.S. ----, 103 S.Ct. 1933, 76 L.Ed.2d 40 (U.S.1983); Alyeska Pipeline and Service Co. v. Wilderness Society, 421 U.S. 240, 247, 258-59, 95 S.Ct. 1612, 1616, 1622, 44 L.Ed.2d 141 (1975); Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). One of the exceptions to the American Rule authorizes a federal court to award counsel fees to a successful party "when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' " Hall v. Cole, supra, 412 U.S. at 5, 93 S.Ct. at 1946, quoting in part 6 J. Moore, Moore's Federal Practice, § 54.77, at 1709 (2d ed. 1972); Skehan v. Board of Trustees of Bloomsburg State College, 538 F.2d 53, 57 (3d Cir.1976) (Skehan I) (in banc) (opinion on remand from the Supreme Court).
 
 
 2
 The present dispute between plaintiff Perichak and Westinghouse Electric Corp. (Westinghouse) involves the application of the "bad faith" exception to the American Rule. The controversy giving rise to this issue came about when Perichak was discharged by Westinghouse for having taken property belonging to Westinghouse. Perichak then brought an action against Westinghouse and the International Union of Electrical, Radio and Machine Workers, Local No. 601 (the "Union"), in which he was unsuccessful. Westinghouse, claiming that Perichak's action was brought in "bad faith," petitioned for attorney's fees. The district court refused to award attorney's fees to Westinghouse, leading to this appeal.[1] Because the record appears clear that the district court, in rejecting Westinghouse's petition for fees abused its discretion, we reverse and remand for a determination of a proper fee award.
 
 I.
 
 3
 As a preliminary matter, it is necessary to explain the correct standard of review of determinations by a district court with respect to the awarding of attorney's fees under the "bad faith" exception to the American rule.[2] It has been established that a district court's finding of "bad faith" or the absence of "bad faith" in a particular case is a factual determination and may be reversed only if it is clearly erroneous. Fed.R.Civ.P. 52(a); Skehan v. Board of Trustees of Bloomsburg State College, 590 F.2d 470, 495 (3d Cir.1978) (Skehan II );[3] see McCandless v. Great Atlantic and Pacific Tea Co., 697 F.2d 198, 201 (7th Cir.1983) ("[T]he district court expressly found that Wolley was guilty of bad faith. Our task, then, is to determine if this finding is clearly erroneous."); Nemeroff v. Abelson, 704 F.2d 652, 660 (2d Cir.1983) (Nemeroff II ); Nemeroff v. Abelson, 620 F.2d 339, 347 (2d Cir.1980) (Nemeroff I ) (district court's finding that action was commenced in bad faith was clearly erroneous); see also Lipsig v. National Student Marketing Association, 663 F.2d 178, 181-82 (D.D.C.1980); Rollison v. Hotel, Motel, Restaurant and Construction Camp Employees, Local No. 879, 677 F.2d 741, 747-48 (9th Cir.1982).[4]
 
 
 4
 Here, as is discussed in a later part of this opinion, the district court in its opinion rendered on the merits of Perichak's claim against Westinghouse, implicitly found that Perichak's action had been brought in "bad faith." Such a determination, while essential to bring the proceeding within the framework of Hall v. Cole, supra and Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), if the successful party (here Westinghouse) is to be authorized fees, does not end our inquiry.
 
 
 5
 It is equally well established that the district court has wide discretion to award or to deny fees pursuant to the "bad faith" exception to the American rule. Alyeska Pipeline Service Co., supra, 421 U.S. at 257-59, 95 S.Ct. at 1621-22; Hall v. Cole, supra, 412 U.S. at 5, 93 S.Ct. at 1946; In re Boston & Providence Railroad Corp., 501 F.2d 545, 549-50 (1st Cir.1974). In order to properly exercise this discretion, the district court must balance the equities between the parties and "may award attorney's fees when the interests of justice so require.... [Indeed,] federal courts do not hesitate to exercise this inherent equitable power whenever 'overriding considerations indicate the need for such a recovery.' " Hall v. Cole, supra, 412 U.S. at 5, 93 S.Ct. at 1946, quoting in part Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-92, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970). Thus, a district court may, in its discretion, refuse to award attorney's fees even where it finds the existence of bad faith, if, in balancing the equities, it nevertheless determines that an award in a particular case would not serve the interests of justice.[5]
 
 
 6
 Consequently, it is clear that any review of the district court's determination must proceed in two steps. First it must be determined whether the plaintiff's action was brought in "bad faith." If it was not, no fees under the "bad faith" exception may be awarded. If, however, a finding of "bad faith" is made, then the district court must proceed to exercise its discretion either in favor of or against the successful party who seeks fees. In almost all situations, and as is the case here, the district court's "bad faith" finding will be predicated upon the record developed at the merits hearing, for it is normally at that proceeding that the bona fides of the plaintiff's claims are disclosed.
 
 
 7
 The discretionary determination to award or deny fees made by the district court must also take content from the merits proceeding. While additional and extraneous factors may be brought to the district court's attention subsequent to the merits proceeding and thus inform the district court as to its discretion, it is apparent that the merits action which underlies and which has given rise to the fee petition, must be scrutinized carefully "to spare members of the public from the expense of defending against baseless allegations." Nemeroff II, supra, 704 F.2d at 654. See e.g. Dougherty v. Lehman, 711 F.2d 555 (3rd Cir.1983) (no fees awarded under Equal Access to Justice Act, 28 U.S.C. § 2412(d) (Supp. IV 1980) where the government's position in opposing claims was held to be substantially justified).
 
 
 8
 Once "bad faith" has been demonstrated, the burden of proof would then shift to the party now proved to have acted in "bad faith." That party must then satisfy the burden of proving mitigating factors and circumstances warranting the exercise of discretion against the award of attorney's fees, despite the fact that "bad faith" has been found. Cf. Hall v. Cole, supra, 412 U.S. at 5, 93 S.Ct. at 1946; McCandless, supra, 697 F.2d at 202; Fisher v. Fashion Institute of Technology, 87 F.R.D. 485 (S.D.N.Y.1980) (attorney's fees awarded against "bad faith" plaintiff reduced in light of income of plaintiff and her need to support dependants); J.H. Wigmore, Wigmore on Evidence (Chadbourn rev. 1981) § 2486; McCormick, McCormick on Evidence (2d ed. 1972) § 337, at 785-89.
 
 
 9
 Were it otherwise, the party seeking attorney's fees would be charged with anticipating circumstances which might bear on the district court's discretion, when such circumstances may be beyond its knowledge. Such a requirement, if imposed, would charge the petitioning party with a negative burden of proof. A party seeking attorney's fees would, in effect, be required to prove facts negating the presence of discretionary circumstances, the nature of which it could not know in advance. Indeed, it is beyond dispute that in cases such as this one, the party against whom fees are sought to be assessed (here, Perichak) has almost exclusive knowledge of those mitigating circumstances which might persuade the district court to deny the petition for attorney's fees. As has often been repeated by courts in analogous circumstances, "where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue." McCormick on Evidence, supra, § 337, at 787; see id., at 786 & 16.
 
 
 10
 Thus, once the party charging "bad faith" has succeeded in establishing that fact, the submissions filed or testified to in opposition to the fee application must be sufficiently substantial to overcome the "bad faith" determination and to provide grounds for the district court's exercise of discretion against awarding fees. Whatever may be the district court's ruling, it "should withstand appellate scrutiny unless appellants can either vitiate the court's critical factual findings or show that the decision to award [or to deny] attorney's fees exceeded a reasonable and restrained exercise of discretion." Nemeroff II, supra, 704 F.2d at 656.
 
 
 11
 Therefore, applying these precepts to the instant appeal, it is evident that the record on the merits proceeding must be examined in the first instance to ascertain whether Perichak's claim was found to have been brought "in bad faith, vexatiously, wantonly, or for oppressive reasons," and if found to have been brought in "bad faith," that finding must survive the clearly erroneous test on review. Second, the record of the fee proceeding must be reviewed in light of both the merits record and the fee record to determine if Perichak satisfied the burden placed upon him and if the district court properly exercised its discretion.
 
 II.
 A.
 
 12
 Perichak had been employed by Westinghouse as an electroplater at its East Pittsburgh plant. He worked with silver plated copper studs. On November 26, 1973, James Loufek, Perichak's foreman, observed Perichak take copper studs from his work area. Loufek notified Atkinson, the plant personnel supervisor, who in turn notified plant security guards. Perichak's car was stopped and searched at the time he attempted to drive out of the plant parking lot, and the security guards discovered two copper bars and two copper studs hidden in the car.
 
 
 13
 Perichak knew that theft of company property was a dischargeable offense. In fact, when confronted by Atkinson and Loufek, the next day, Perichak not only confessed his theft but begged the men to impose a lesser penalty on him. Instead, Westinghouse fired Perichak and pressed criminal charges against him. Perichak, however, was not prosecuted on the criminal charges because he successfully petitioned the Allegheny County Common Pleas Court for admission to its probationary program (Accelerated Rehabilitation Program (ARP)) for first time offenders.
 
 
 14
 After his discharge, Perichak filed a grievance. Perichak maintained that he had discovered the copper bars and studs in his car, and that, believing that the material had been planted there by co-workers as a practical joke, decided to drive off with them, with the intention of returning them to the shop the next morning. Perichak claimed that when stopped by the security guard, he allowed the guard to search the car, and told the guard what he thought had happened.
 
 
 15
 The International Union of Electrical, Radio and Machine Workers, Local Union No. 701 ("Union") processed this grievance through the fourth step of the grievance procedure, and attempted to persuade Westinghouse not to dismiss Perichak. Westinghouse, however, remained adamant in its defense of its actions. In the face of Westinghouse's position, and because the evidence against Perichak appeared so overwhelming, the Union decided not to take the matter to arbitration.
 
 
 16
 Perichak thereafter filed an unfair labor practice charge against the Union with the National Labor Relations Board, claiming that the Union had violated its duty of fair representation by refusing to take his grievance to arbitration. The Board dismissed the charge after an investigation.
 
 B.
 
 17
 On May 13, 1977, Perichak filed suit against Westinghouse and the Union in federal district court pursuant to Section 301 of the LMRA, 29 U.S.C. § 185. In his sworn complaint, Perichak alleged that he had not, in fact, stolen the copper, that he was discharged without just cause, and that his discharge violated the collective bargaining agreement between Westinghouse and the Union.
 
 
 18
 Trial did not commence until June 24, 1980, after about three years of pre-trial discovery. At trial, Perichak denied making any admission of the theft of the copper, and denied stealing the copper. While under oath, he offered a series of theories to explain the presence of the copper in his car: 1) he went into shock when he discovered the copper in his car and thought someone had tried to play a trick on him; 2) he found the copper and put it in his trunk so that he could turn it over to the police at some later time; 3) after discovering the copper in his car, he resolved to take it home and return it to the plant the next day.
 
 
 19
 On June 27, 1980, at the conclusion of these proceedings (which are characterized in this opinion as the merits proceeding) the trial court found for the Union and Westinghouse. The court stated, among other things, that:
 
 
 20
 The court concludes and finds as a fact that the reason why the Union was unable to prevail at the fourth step, or any of the intervening steps, of the grievance machinery was because the case against Mr. Perichak was too strong for the Union to reasonably expect to prevail. The evidence against Mr. Perichak was, in the judgment of the court, sufficient for a finding of his guilt beyond a reasonable doubt that he had stolen the property of Westinghouse Electric Corporation....
 
 
 21
 This court finds [Perichak's explanation of the incident] to be incredible, and the court finds this to be a material false statement under oath on the part of Mr. Perichak, who persisted in that statement here in court. And, therefore, the Court discards all of the testimony of Mr. Perichak....
 
 
 22
 And, finally, the Court finds that the Company did, in fact, have just cause to dismiss Mr. Perichak ... because the Court finds that Mr. Perichak did, in fact, violate the rules of the Company and the laws of the Commonwealth of Pennsylvania in stealing the copper on November 26, 1973 which was found in his vehicle....
 
 
 23
 The Court further finds that on November 27, 1973 Mr. Perichak, in the presence of Mr. Atkinson and Mr. Loufek of the Company, admitted that he had stolen this property and at that time asked them to inflict some punishment other than that to which they were entitled; namely his discharge.
 
 
 24
 App. at 21a-25a.
 
 
 25
 Thus, the district court while not making an express finding of "bad faith" or oppressiveness, found that "the case against Mr. Perichak was too strong ...;" the evidence against Mr. Perichak "was sufficient for a finding of his guilt beyond a reasonable doubt that he had stolen [Westinghouse's] property ...;" that Perichak's explanation was "incredible;" that Perichak made a "material false statement under oath;" that Perichak violated the company rules and the Commonwealth's laws in stealing the copper and that Perichak admitted his theft but asked for the infliction of a lesser penalty rather than discharge. Moreover, the court rejected all of Perichak's testimony because of his false explanations made under oath.
 
 C.
 
 26
 On July 9, 1980, Westinghouse and the Union petitioned for an award of attorney's fees. A hearing on the petition was held on December 23, 1980. No action was taken on the petition until nearly two years after it was filed. On July 15, 1982, the district court filed its opinion denying attorney's fees in this case. Despite its earlier findings made in the merits proceeding, the court in the fee proceeding found that Perichak had not acted in bad faith in instituting or in maintaining his suit, and that Perichak's counsel did not maintain the suit from 1977 to 1980 in bad faith. Therefore, the district court found no reason to award fees against Perichak.[6] Westinghouse thereupon appealed.
 
 III.
 
 27
 Based upon the record created in Perichak's underlying § 301 merits action, the district court's subsequent ruling in the fee proceeding that Perichak did not commence or maintain his action in "bad faith," is difficult to understand. Not only had the district court found that Perichak's merits case was nonexistent at the time of its commencement in 1977, but, after almost three years of pretrial discovery, not an iota of evidence was uncovered to bolster Perichak's case.[7]
 
 
 28
 Indeed, on the basis of the record developed in the merits proceeding which resulted in the district court's merits findings and credibility determinations, Perichak could not have commenced his action in other than "bad faith," nor could he have maintained this action with any reasonable prospect of prevailing on the merits.[8] In light of the evidence of record in the merits proceeding, even though the district court did not make an express finding of "bad faith", it is manifest that the findings which the district court did make reach the same irrefutable result.[9] The district court's emphatic rejection of Perichak's testimony and its unequivocal endorsement of Westinghouse's and the Union's position during the merits proceeding, makes all the more inexplicable its subsequent rulings in the fee proceeding that Perichak "cannot be said to have acted in bad faith merely because the trier of fact emphatically resolved these issues against him." App. at 78a-79a.
 
 
 29
 To the extent that the district court's merits opinion is read as finding "bad faith", it is not clearly erroneous and would support an award of fees to Westinghouse under the "bad faith" exception to the American Rule. To the extent that it is construed otherwise, such a finding has no support in the record and must therefore be considered as clearly erroneous.
 
 IV.
 
 30
 The threshold "bad faith" determination, having been established to our satisfaction, the question remains whether the district court's denial of Westinghouse's petition for attorney's fees constitutes an abuse of discretion. Nemeroff II, supra, 704 F.2d at 656; Nemeroff I, supra, 620 F.2d at 348-49; Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1087-88 (2d Cir.1977).
 
 A.
 
 31
 In justifying its decision not to grant Westinghouse's fee petition, the district court stated that an award of attorney's fees was not appropriate because:
 
 
 32
 ... plaintiff raised issues that went to the weight and credibility of the evidence. This he had a constitutional right to do, and he cannot be said to have acted in bad faith merely because the trier of fact emphatically resolved these issues against him.... In view of the foregoing, we believe that to impose attorneys' fees ... would not only be inconsistent with the standards set by the Supreme Court ... but also that it would have an undesirable chilling effect on litigants generally.
 
 
 33
 App. at 78a-79a.
 
 
 34
 In so reasoning, the district court essentially relied on two cases[10]--a reliance which was misplaced. Neither of these two cases involved a situation in which the losing party on the merits, in giving testimony critical to the success of his claim, was expressly found to have lied under oath by the trier of fact. Moreover, it is well settled that there is no constitutional right to commit perjury, United States v. Wong, 431 U.S. 174, 178, 97 S.Ct. 1823, 1825, 52 L.Ed.2d 231 (1977); United States v. Mandujano, 425 U.S. 564, 584, 96 S.Ct. 1768, 1780, 48 L.Ed.2d 212 (1976) even though a right may exist to raise issues going to the weight and credibility of evidence. App. at 78a. Indeed, the decision in Republic of Cape Verde v. A & A Partners, 89 F.R.D. 14 (S.D.N.Y.1980), applying the principles of Nemeroff I and Browning Debenture Holders' Committee, clearly supports the awarding of fees in this case.[11]
 
 
 35
 Moreover, the concern expressed by the district court that the imposition of attorneys' fees would be inconsistent with the standard set by the Supreme Court and would "have an undesirable chilling effect on litigants generally," App. at 79a, misreads the Supreme Court's instruction and ignores the very exception to the American Rule announced by that Court. The "exception," as has been previously noted, provides that attorneys' fees must be awarded whenever overriding considerations indicate the need for such a recovery. Hall v. Cole, 412 U.S. at 5, 93 S.Ct. at 1946. One such need was expressed in Nemeroff II where the court, in interpreting Hall stated that such fees "must be applied in appropriate cases to spare members of the public from the expense of defending against baseless allegations." Nemeroff II, supra, 704 F.2d at 654.
 
 
 36
 No more appropriate case can be imagined for the imposition of attorneys' fees against a losing plaintiff than a case such as the one under review here, where the plaintiff's claims were the product of perjured testimony, false affidavits and theft giving rise to discharge. As the Nemeroff II court observed:
 
 
 37
 We do not demand that attorneys come to court with their cases already proven, but we do require that they have some basis for invoking the judicial process and for continuing their lawsuits when promising evidence evaporates.
 
 
 38
 Id. 704 F.2d & n. 4.
 
 B.
 
 39
 Nor did Perichak satisfy his burden of demonstrating the existence of circumstances or factors sufficient to merit an exercise of the district court's discretion in his favor. The materials submitted by Perichak in the fee proceedings did not provide the district court with any additional basis for refusing Westinghouse's fee petition in light of the earlier record developed. Perichak's answer filed in the fee proceeding did no more than deny in conclusory fashion that he had not acted in "bad faith" vexatiously or maliciously, and that he did nothing improper or wrong with respect to Westinghouse. In those papers, he continued to deny the theft of the copper from Westinghouse and that he was rightfully discharged. The balance of his answer was devoted to the actions of Perichak's counsel Bertani, a subject which is not before us on appeal.[12] It is thus, not surprising that the district court's fee proceedings opinion makes no reference to Perichak's submissions, for they contributed nothing to the resolution of the issue before the court, and indeed did no more than advance the same arguments that were rejected by the district court as false and perjurious in the merits proceeding.[13]
 
 
 40
 Overall, the district court's determination with respect to Westinghouse's petition cannot be reconciled with the more detailed findings which the district court had made some two years earlier in ruling in Westinghouse's favor. No additional factors informing discretion appear in the district court's fee proceeding opinion, and for good reason: no additional evidence and no mitigating circumstances were produced by Perichak subsequent to the court's merits ruling.
 
 
 41
 Thus, to the extent that the district court in its letter opinion states that Perichak "cannot be said to have acted in 'bad faith' merely because the trier of fact emphatically resolved [the merit] issues against him," we reject that finding as being clearly erroneous. The district court's own findings and conclusions rendered in the merits proceeding completely undermine any such "good faith" finding, and no evidence exists in the entire record which could support such an anomalous result.
 
 
 42
 Therefore, to the extent that the district court relied upon such a finding in refusing to impose attorneys' fees on Perichak, the district court improperly exercised its discretion. To the further extent that nothing appears of record which would warrant the exercise of the district court's discretion in favor of Perichak, the district court also abused its discretion. Then Chief Judge Magruder, writing for the First Circuit in In re Josephson, 218 F.2d 174 (1st Cir.1954) there defined abuse of discretion in the following terms:
 
 
 43
 "Abuse of discretion" is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.
 
 
 44
 Id., 218 F.2d at 182. Applying that definition here, we are of the "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."
 
 V.
 
 45
 In normal course, after having been satisfied that the "bad faith" predicate had been established, we would have been inclined to remand the proceeding to the district court so that it could make the second-level discretionary determination to award or to deny fees. See supra at 7; Nemeroff II, supra, 704 F.2d at 660. Our review of the record on which that determination would be required to rest reveals that such an action could lead to but one result--the award of attorney's fees to Westinghouse. Given both the record before us and the determination that the plaintiff lied about matters going to the heart of his case, we would be obliged to hold that the denial of such fees would constitute an abuse of discretion. Thus, because a remand for this purpose would only squander judicial time which might better be devoted to more constructive matters, we see no need to burden the district court with a remand in order to duplicate our independent review of the record.
 
 
 46
 The district court's order of July 15, 1982, denying Westinghouse's petition for fees, will be reversed and the case remanded so that the amount of fees to which Westinghouse is entitled may now be determined.
 
 
 
 *
 Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 Westinghouse filed its notice of appeal from this denial on August 13, 1982. The Union has not filed a notice of appeal, nor has it joined in Westinghouse's brief before this court. Therefore, we treat this appeal as exclusively that of Westinghouse
 
 
 [2]
 Because this power to award fees under the "bad faith" exception to the American Rule is derived from the general equitable powers of the federal courts, it is clear that a district court may award attorney's fees pursuant to this principle in actions instituted under § 301 of the Labor Management Relations Act. 29 U.S.C. § 185. See Obin v. District No. 9, International Association of Machinists and Aerospace Workers, 651 F.2d 574, 577 (8th Cir.1981); Local 4076 v. United Steelworkers of America, 338 F.Supp. 1154, 1164 (W.D.Pa.1972). The parties here do not argue otherwise
 
 
 [3]
 In that case Chief Judge Seitz explained that:
 The district court made factual findings, unchallenged here, that would preclude a fee award based on the alternative grounds of the defendants' bad faith either in the pre-litigation stages of this case or in pursuit of their defense.
 Skehan v. Board of Trustees of Bloomsburg State College, 590 F.2d 470, 490 (3d Cir.1978) (Skehan II ). The district court's findings to which the appeals court referred stated that:
 
 
 [47]
 The individual defendants did not act vexatiously or oppressively in the pre-litigation stages of this case
 
 
 [48]
 The defense of this case has not been pursued in bad faith, or vexatiously, wantonly or oppressively
 Skehan v. Board of Trustees of Bloomsburg State College, 436 F.Supp. 657, 663 (M.D.Pa.1977), aff'd 590 F.2d 470 (3d Cir.1978).
 
 
 [4]
 Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) provides additional support for this rule. In that case the Supreme Court determined that review of a determination of the "ultimate fact" in that case--a finding of discriminatory intent--was subject to Fed.R.Civ.P. 52(a)'s clearly erroneous standard as a pure question of law. Pullman-Standard, supra, 456 U.S. at 285-90, 102 S.Ct. at 1788-91. It seems clear to me that a finding of bad faith is closely analogous to a finding of discriminatory intent, since such a finding goes to the " 'design, motive and intent with which men act,' " Pullman-Standard, supra, 456 U.S. at 288, 102 S.Ct. at 1789, quoting United States v. Yellow Cab Co., 338 U.S. 338, 341, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949), to the same extent as does a finding of discriminatory intent. Therefore, both seem equally subject to review under the clearly erroneous test of Rule 52(a)
 
 
 [5]
 Thus, for instance, it would not be an abuse of discretion for a district court to deny an attorney's fees petition where neither party acted in good faith in bringing or maintaining the litigation. See E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas, 387 F.Supp. 1001 (D.Ala.1974), aff'd in part, vacated in part on other grounds, 551 F.2d 1026 (5th Cir.), cert. denied 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1977)
 
 
 [6]
 On appeal Westinghouse has apparently abandoned its claim that Perichak's counsel acted in bad faith in bringing and maintaining this action. Consequently, the propriety of the district court's determination in that respect is not before this court
 
 
 [7]
 Perichak had evidently successfully petitioned the Allegheny Common Pleas Court for admission to its probationary program for first time offenders (Accelerated Rehabilitation Program) after criminal charges were brought against him by Westinghouse. This was apparently made part of the record in the merits proceeding. See Record at 67, 76; Perichak's brief at 2-3; Westinghouse's brief at 3. Reference to this status was also made by Perichak's counsel during a colloquy with the court in the fee proceeding. App. at 55a. In light of Perichak's action and the inferences to be drawn from it, it is remarkable that Perichak saw fit to bring any action at all
 
 
 [8]
 Compare the decisions in Nemeroff v. Abelson, 704 F.2d 652 (2d Cir.1983) (Nemeroff II ); and Black Musicians of Pittsburgh v. Local 60-471, American Federation of Musicians, 442 F.Supp. 855, 859 (W.D.Pa.1977), with that in Nemeroff v. Abelson, 620 F.2d 339 (2d Cir.1980) (Nemeroff I ). In Nemeroff II, the Court of Appeals affirmed an award of fees based on a finding of bad faith in maintaining an action after it became clear that the claim was no longer colorable--that the facts necessary to support the claim could not be established. Id., supra, 704 F.2d at 659-60. The court concluded that the attorneys maintained the suit in bad faith because they persisted in the suit despite the fact that, after a long period of discovery, they could find no witnesses to support their case, and because the records they relied upon could not support an inference of wrongdoing. A case maintained solely on the basis of unsubstantiated rumors in the press, id., 704 F.2d at 658, was one maintained in bad faith. Nemeroff II, supra, 704 F.2d at 658-59
 In Black Musicians, the court determined that the EEOC brought its discrimination action in bad faith for several reasons. First, there was little evidence of discrimination available. Moreover, the court found that the EEOC knew that the problems asserted could be attributed to the party claiming discrimination. Further, there was no evidence of the existence of disparate employment opportunities. Finally, the court found that the EEOC knew that the statistics offered in their case in chief were not conclusive, and, in fact, tended to support the position of the defendant. See Black Musicians, supra, 442 F.Supp. at 859.
 In contrast to the results reached in Nemeroff II and Black Musicians, the court of appeals concluded in Nemeroff I that the district court's finding of bad faith was clearly erroneous. In that case, with respect to an award of attorney's fees against the unsuccessful litigant's attorneys, the court determined that a reasonable attorney could have concluded from the facts available to him at the time the litigation was commenced that facts supporting the claim might be established. As such, the attorneys could not be said to have brought the action in bad faith. Nemeroff I, supra, 620 F.2d at 348-49. But see Nemeroff II, supra, 704 F.2d at 656-60.
 In this case it is clear from the district court's own findings that Perichak knew that the only way he could adduce facts supporting his claim, would be to invent them. All such facts, derived principally from Perichak's own self-serving testimony were found to be materially false statements under oath by the district court. Thus, not only did Perichak know that there was virtually no evidence to support his position, and that, indeed, almost all of the evidence supported the position of Westinghouse and the Union, but Perichak chose to build his case upon sworn allegations that were false, and testimony that was perjured. Thus, this case falls squarely within the Nemeroff II, Black Musicians, line of cases.
 
 
 [9]
 Indeed, Perichak's "materially false statements [made] under oath" (App. at 21a) are, having been critical to the success of his case, alone, enough to support a finding of bad faith. In this case there was no question that Perichak lied under oath. The district court so found. (App. at 60a). Such conduct has been held to constitute bad faith. Carrion v. Yeshiva University, 535 F.2d 722 (2d Cir.1976) (trial court found that plaintiff's testimony was a tissue of lies, and that she had "deliberately perjured herself." Id., at 728). Carrion more than supports the proposition that the litigation in this case was meritless, vexatious, and was brought in bad faith
 
 
 [10]
 State Security Insurance Co. v. White, 498 F.Supp. 873, 875 (S.D.Ga.1980), aff'd mem., 667 F.2d 97 (11th Cir.1982) (no bad faith where no proof offered to show that plaintiff knew it could not prove facts necessary to obtain judgment in its favor); Republic of Cape Verde v. A & A Partners, 89 F.R.D. 14 (S.D.N.Y.1980) (Magistrate's report and recommendation adopted by the district court) (defendants found to have defended action in "bad faith" where plaintiff's right to a deposit was never seriously disputed by defendants, where no defense was raised on plaintiff's motion for summary judgment, and where even after judgment, defendants refused to turn over the deposit in an apparent effort to obtain the benefits of high market interest rates)
 
 
 [11]
 As the court noted in that case:
 In sum, as defendants well knew[,] there was no colorable defense to the contract claim.
 Nevertheless, defendants compelled the plaintiff to resort to litigation to recover its deposit. This is one of the traditional situations in which attorneys' fees have been awarded under the bad faith exception.
 Republic of Cape Verde, supra, 89 F.R.D. at 23 (Magistrate's Report and Recommendation).
 
 
 [12]
 See note 6 supra
 
 
 [13]
 It is observed in passing that the answer filed by Perichak was not under oath. While the issue of the required form of answer need not be addressed here in light of the disposition of this case, it would seem unusual for the district court to consider in the exercise of its discretion, any materials supplementing an evidentiary record by assertions which are not themselves evidentiary