SIERRA CLUB, the City Club of New York, Business For Mass Transit, Inc., NYC Clean Air Campaign, Inc., West 12th Street Block Association, Hudson River Fishermen's Association, Hudson County Citizens For Clean Air, Seymour Durst, Otis Burger, Mary Rowe, and Howard Singer, Plaintiffs,

Sierra Club, the City Club of New York, NYC Clean Air Campaign, Inc., and Hudson River Fishermen's Association, Plaintiffs-Appellees, Cross-Appellants,

v.

UNITED STATES ARMY CORPS OF ENGINEERS, John Marsh, as Secretary of the Army of the United States, Joseph K. Bratton, as Chief of Engineers, Walter M. Smith, Jr., as New York District Engineer of the United States Army Corps of Engineers, and William C. Hennessy, as Commissioner of the New York State Department of Transportation, United States Department of Transportation, Andrew L. Lewis, Jr., as Secretary of Transportation of the United States, Raymond A. Barnhart, as Administrator of the Federal Highway Administration, Defendants-Appellants, Cross-Appellees,

The City of New York, Defendant-Intervenor.

Nos. 634, 635 and 747, Dockets 84-6287, 84-6289 and 84-6293.

United States Court of Appeals, Second Circuit.

Argued Feb. 26, 1985.

Decided Oct. 28, 1985.

Howard Wilson, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Peter C. Salerno, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for defendant-appellant U.S. Army Corps of Engineers.

Paul J. Curran, New York City (Bruce Margolius, Steven E. Shapiro, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel), for defendant-appellant New York State Dept. of Transp.

Albert K. Butzel, New York City (Mitchell S. Bernard, Jean M. McCarroll, Butzel & Kass, New York City, of counsel), for plaintiffs-appellees.

Before OAKES, MESKILL and KEARSE, Circuit Judges.

MESKILL, Circuit Judge:

Appellants the United States Army Corps of Engineers (Corps) and the Commissioner of the New York State Department of Transportation (State) appeal from a judgment entered against them and the Federal Highway Administration (FHWA) in the United States District Court for the Southern District of New York, Griesa, J., awarding attorneys' fees to appellees. The district court awarded the fees under the bad faith exception to the American Rule.

Appellees cross-appeal the denial of their request for an award of fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1982) (EAJA). For the reasons that follow, we affirm in part, reverse in part and remand the case to the district court.

## BACKGROUND

The instant appeal and cross-appeal involve "Westway," the once-proposed replacement for a portion of the West Side Highway in lower Manhattan. Other installments in this lengthy dispute are *Sierra Club v. United States Army Corps of Engineers*, 772 F.2d 1043, 1046 (2d Cir. 1985); *Sierra Club v. United States Army Corps of Engineers*, 732 F.2d 253 (2d Cir. 1984); *Sierra Club v. United States Army Corps of Engineers*, 701 F.2d 1011 (2d Cir.1983); and *Sierra Club v. Hennessy*, 695 F.2d 643 (2d Cir.1982). In this appeal and cross-appeal we are called on to review the district court's ruling on appellees' attorneys' fees application. Because the facts of this case have been exhaustively reviewed in our previous opinions and in the district court's opinions, we detail here only those facts that are necessary to an understanding of our decision.

The district court's decision to award fees is reported in *Sierra Club v. United States Army Corps of Engineers*, 590 F.Supp. 1509 (S.D.N.Y.1984) (*Sierra Club III*). The award is based on conduct that occurred at two separate trials, the results of which are reported in *Action for Rational Transit v. West Side Highway Project*, 536 F.Supp. 1225 (S.D.N.Y.1982), and *Sierra Club v. United States Army Corps of Engineers*, 541 F.Supp. 1367 (S.D.N.Y.1982) (*Sierra Club I*). *Action for Rational Transit* involved appellees,[1] the Corps and the State. The dispute concerned the Corps' issuance of a landfill permit for Westway. Appellees claimed that because the Corps relied on an Envi-

---

1. Although there were twelve plaintiffs before the district court, only four joined in the fee application. According to appellees, this was done because only these four plaintiffs contributed to the costs of litigation. Br. of Appellees at 1 n. 1. *See also Sierra Club v. United States Army Corps of Engineers*, 590 F.Supp. 1509, 1512 n. 1 (S.D.N.Y.1984).

ronmental Impact Statement (EIS) issued in 1977 by the State and FHWA which inadequately dealt with fisheries issues, refused to supplement that EIS when subsequent studies showed the magnitude of the EIS' error and failed to independently and adequately consider fisheries issues, its issuance of the landfill permit violated the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq.* (1982), section 404 of the Clean Water Act, 33 U.S.C. § 1344 (1982), and section 10 of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. § 403 (1982). The district court agreed that NEPA, the Clean Water Act and the Rivers and Harbors Act had been violated and issued an injunction setting aside the landfill permit.

After the first trial was concluded, the complaint was amended to add FHWA as a defendant and the parties were given the opportunity to offer additional evidence. Appellees, the State and FHWA were involved in this second trial. At issue was FHWA's approval of Westway and its alleged violation of NEPA by relying on the inaccurate 1977 EIS and refusing to supplement that EIS when new fisheries information became available. In *Sierra Club I*, the district court found that the 1977 EIS was inaccurate and inadequate when issued and that "FHWA, in collaboration with the [State], acted in willful derogation of the requirements of law in failing to issue a corrective supplemental environmental impact statement." 541 F.Supp. at 1383. It, therefore, nullified FHWA approval of the design, location and funding of Westway.

Appeals were taken from both district court decisions. The Corps and FHWA limited their appeals to certain aspects of the relief order. The State, however, challenged both the relief ordered and the merits of the court's decisions. The results of these appeals are reported in *Sierra Club v. United States Army Corps of Engineers*, 701 F.2d 1011 (2d Cir.1983) (*Sierra Club II*).

On the merits, we affirmed the district court's conclusion that FHWA and the Corps had violated NEPA by relying on the 1977 EIS in reaching their decisions. 701 F.2d at 1029–31. We also shared the district court's view that initial responsibility for the EIS' inaccuracies on the fisheries issues must be attributed to the State. *Id.* at 1031. The court's finding that the Corps had violated the Clean Water Act was also affirmed. *Id.* at 1031–33. However, because no private cause of action exists under section 10 of the Rivers and Harbors Act, we reversed the finding that the Corps had violated that section. *Id.* at 1033.

With respect to the relief ordered by the district court, we upheld the court's requirement that a supplemental EIS on fisheries issues be prepared before further work on Westway could proceed. *Id.* at 1034–35. We also affirmed the court's requirement that FHWA, the Corps and the State keep "records of all activities, deliberations, and communications ... which occur in relation to [the Westway] permit application." *Id.* at 1040–41. However, we vacated those parts of the court's order that required the supplemental EIS to include information on nonfisheries issues, *id.* at 1035–37, that prohibited FHWA and the Corps from acting as joint lead agencies, *id.* at 1041–42, and that appointed a special master to oversee compliance by FHWA and the Corps with the court's directives, *id.* at 1042–49.

Appellees' fee application was originally filed after the district court's decision in *Action for Rational Transit* and was supplemented after the court's decision in *Sierra Club I* and our decision in *Sierra Club II*. Appellees sought to recover their fees from FHWA, the Corps and the State under the bad faith and common benefit exceptions to the American Rule. They also sought to recover fees from FHWA and the Corps under the EAJA.

In *Sierra Club III*, the district court rendered its decision on the fee application. The court refused to award fees under the common benefit rule because of its belief that the rule was not applicable to the case before it. 590 F.Supp. at 1525–26. It also rejected the claim for fees under the EAJA, holding that one plaintiff's ineligibility for

fees under the EAJA barred all plaintiffs from recovering fees. *Id.* at 1526.

The court did, however, award fees and disbursements under the bad faith exception to the American Rule. The court found that the Corps and the State acted in bad faith at the first trial. *Id.* at 1517–22. It also found that FHWA and the State acted in bad faith before and during the second trial. *Id.* at 1522–25. Finally, the court awarded fees against the State in connection with the appeal, finding that the State's appeal on the merits was "merely a further assertion of the baseless positions taken in the district court." *Id.* at 1525. Limiting the award to expenses incurred on fisheries related work and declining to apply a multiplier, the court awarded appellees a total of $290,254.

In awarding fees against the State, the court rejected the State's claim that it was immune from a fee award. First, relying on our decision in *Gagne v. Maher*, 594 F.2d 336 (2d Cir.1979), *aff'd on other grounds*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), the court rejected the State's argument that the award was barred by the Eleventh Amendment. Second, reasoning that an award of fees under the bad faith exception differs from an award of punitive damages, the court held that the award of bad faith fees against the State was not barred by public policy as expressed in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

### DISCUSSION

The State and the Corps, but not FHWA, appeal the award of fees. The State raises four basic arguments: (1) the award of fees against it violates the Eleventh Amendment; (2) the award of fees under the bad faith exception constitutes an award of punitive damages from which it is immune; (3) the district court's finding of bad faith is unwarranted; and (4) the district court's calculation of fees is defective. The Corps limits its appeal to a claim that the record does not support the district court's finding of bad faith. For their part, appellees cross-appeal the court's holding that they are ineligible for fees under the EAJA.

### A. *Immunity*

As a threshold matter, the State argues that it is immune from an award of fees. This argument has two components. First, the State claims that the Eleventh Amendment is an absolute bar to an award of fees against a state. In making this argument, the State relies on the general proposition announced in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), that absent a waiver of sovereign immunity a federal court may not award money damages against a state. Second, the State claims that even if the Eleventh Amendment does not bar an award of attorneys' fees against a state in general, the award of fees under the bad faith exception constitutes punitive damages, the awarding of which is barred by public policy. In making this argument, the State relies on *City of Newport*, where the Supreme Court invoked public policy considerations in reversing an award of punitive damages against a municipality.

The State's Eleventh Amendment argument need not detain us long. Although the Supreme Court arguably considers the issue of whether the Eleventh Amendment bars an award of attorneys' fees against a state under the common law an open one,[2] and although other circuits are split on this issue,[3] we have consistent-

---

**2.** Compare *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 269 n. 44, 95 S.Ct. 1612, 1627, n. 44, 44 L.Ed.2d 141 (1975) (award of fees against a state would raise Eleventh Amendment issues that Court does not decide) with *Hutto v. Finney*, 437 U.S. 678, 689–92, 98 S.Ct. 2565, 2572–74, 57 L.Ed.2d 522 (1978) (award of bad faith fees against a state that refused to comply with injunction upheld).

**3.** Compare *Bond v. Stanton*, 528 F.2d 688, 690–92 (7th Cir.1976), *remanded*, 429 U.S. 973, 97 S.Ct. 479, 50 L.Ed.2d 581 (1977); *Thonen v. Jenkins*, 517 F.2d 3, 7–8 (4th Cir.1975); *Souza v. Travisono*, 512 F.2d 1137, 1139–40 (1st Cir.), *remanded*, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975), with *Hallmark Clinic v. North Carolina Department of Human Resources*, 519 F.2d

ly held that the Eleventh Amendment is not a bar.

The first case in which we expressed our view that an award of fees against a state fits within the "ancillary effect" doctrine of *Edelman* was *Jordan v. Fusari*, 496 F.2d 646, 651 (2d Cir.1974). We subsequently affirmed that position in *Class v. Norton*, 505 F.2d 123, 126–27 (2d Cir.1974), and *Fitzpatrick v. Bitzer*, 519 F.2d 559, 571 (2d Cir.1975), *aff'd in part, rev'd in part*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Most recently, our position on this issue was restated in *Gagne*, 594 F.2d at 336. The State points to no decision since *Gagne* that causes us to question our long held position. "Thus, we adhere to our own precedents, which we believe are consistent with Supreme Court authority, and hold that the award of attorneys' fees in this case was a permitted 'ancillary effect' of a proper prospective decree and therefore not barred by the Eleventh Amendment." *Gagne*, 594 F.2d at 342.[4]

We also find the State's punitive damages argument unconvincing. The basis of its argument is *City of Newport*. In that case, the Supreme Court held that a municipality is immune from an award of punitive damages under 42 U.S.C. § 1983 (1982). The Court stated that punitive damages "are not intended to compensate the injured party, but rather to punish the tortfeasor ... and to deter him and others from similar extreme conduct." 453 U.S. at 266–67, 101 S.Ct. at 2759. Looking to the punitive component, the Court explained that "[n]either reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers." *Id.* at 267, 101 S.Ct. at 2760.

■■■ Seizing on the punitive aspect of an award of bad faith attorneys' fees, the State claims that an award of bad faith

fees is barred by the holding of *City of Newport*. We believe that an award of fees under the bad faith exception rests on different principles than does an award of punitive damages. Although the award of fees for bad faith has a punitive and deterrent flavor, the award serves a compensatory purpose. *Cf. Stolberg v. Members of the Board of Trustees*, 474 F.2d 485, 489–90 (2d Cir.1973), *cert. denied*, 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 181 (1976). That is why we require that the award be limited to those expenses necessary to counter the losing party's bad faith. *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir.1977). Thus, we do not find the rationale of *City of Newport* controlling.

Our position is supported by relevant Supreme Court precedent. *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). In its reliance on *City of Newport*, the State ignores *Hutto*, which is more directly on point. In *Hutto*, the Court sanctioned the use of a fee award to secure a state's compliance with a district court's order. The basis of the award was the state's bad faith. *Id.* at 689, 98 S.Ct. at 2572. Nowhere did the Court suggest that such an award was barred as a form of retribution against innocent taxpayers. Thus, *Hutto* allows a federal court to so "penalize" a state based on its bad faith conduct before that court and nothing in *City of Newport* indicates a retreat from that position.

■■■ In sum, a federal court has the inherent power to award attorneys' fees against a party who litigates in bad faith. Such authority is a necessary incident to the power to regulate the conduct of the parties before the court. In the instant case, neither the Eleventh Amendment as construed in *Edelman* nor public policy as

1315, 1317 (4th Cir.1975); *Jordon v. Gilligan*, 500 F.2d 701, 705–10 (6th Cir.1974), *cert. denied*, 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975).

**4.** The State attempts to limit *Gagne's* holding to an allowance of fees under a statute enacted

pursuant to section 5 of the Fourteenth Amendment. A reading of *Gagne*, however, clearly shows that we talked of two exceptions to the Eleventh Amendment, one under *Edelman* and one under section 5. 594 F.2d at 341–42. Thus, we reject the State's narrow reading of *Gagne*.

expressed in *City of Newport* immunizes the State from the result of the court's exercise of this power. Thus, we hold that the district court had the authority to award fees against the State.

### B. *Bad Faith*

#### 1. *Standards*

 Under what is known as the American Rule, parties to litigation normally pay their own attorneys' fees regardless of the lawsuit's outcome. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). There are, however, certain exceptions to this general rule. One of these exceptions is where the court determines that the unsuccessful party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Alyeska,* 421 U.S. at 258–59, 95 S.Ct. at 1622 (quoting *F.D. Rich Co. v. United States,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). The award of fees pursuant to this exception is an exercise of a federal court's "inherent equitable powers." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985).

 Under the law in this Circuit, to award fees under the bad faith exception a court must find clear evidence that the losing party's claims were "entirely without color and made for reasons of harassment or delay or for other improper purposes." *Browning Debenture Holders',* 560 F.2d at 1088; *Eastway Construction,* 762 F.2d at 253.[5] The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice. *Colombrito v. Kelly,* 764 F.2d 122, 133 (2d Cir.1985); *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d

894, 898 (2d Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). Under this test, a claim is "entirely without color" when it lacks any legal or factual basis. *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980) (per curiam) (*Nemeroff I* ). While there is no precise definition of "improper purpose" it may be evidenced by conduct occurring either before or during trial. *Cf. Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973).

 An award of fees under the bad faith exception calls for a two-tiered standard of review. A district court's determination that bad faith exists is a factual finding which may only be set aside if it is clearly erroneous. *See Perichak v. International Union of Electrical Radio and Machine Workers,* 715 F.2d 78, 79 (3d Cir. 1983); *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 181 (D.C.Cir.1980); *Nemeroff I,* 620 F.2d at 347. In addition, because the awarding of fees involves an exercise of equitable powers, the decision to award or deny fees lies in the discretion of the district court. Thus, even where the district court's finding of bad faith is not clearly erroneous, we must still review the award to determine if it was a proper exercise of discretion. *See Perichak,* 715 F.2d at 80; *Nemeroff v. Abelson,* 704 F.2d 652, 660–61 (2d Cir.1983) (*Nemeroff II* ); *Lipsig,* 663 F.2d at 181–82. If the court did not abuse its discretion, the award of fees must be affirmed.

#### 2. *Merits*

 The various legal claims advanced by the Corps at the first trial and by the State at both trials, as well as the factual support for those claims, have been dealt with in great detail in our *Sierra Club II*

---

**5.** The parties talk of two types of bad faith, pre-litigation bad faith and bad faith during trial, and set forth different standards to control each situation. Compare the supposed pre-litigation standard of *Stolberg v. Members of the Board of Trustees,* 474 F.2d 485, 490 (2d Cir. 1973) (was the bringing of the action unnecessary and compelled by the defendant's "unreasonable, obdurate obstinacy") with the *Browning Debenture Holders'* standard, 560 F.2d at 1088 (did a party present colorless claim for an improper purpose). While there may be situations where this distinction is useful, in the instant case, where the parties have gone through two trials and an appeal, we see no reason to make such a distinction. Thus, here we apply only the *Browning Debenture Holders'* standard and look to activity both before and during trial for evidence of an improper purpose. *See Republic of Cape Verde v. A & A Partners,* 89 F.R.D. 14, 22–25 (S.D.N.Y.1980).

opinion and in the district court's *Sierra Club III*, *Sierra Club I* and *Action for Rational Transit* opinions. We need not explore the legal and factual details of those trials again. Briefly, the description in the 1977 EIS of the area to be filled as a biological wasteland was a gross error. The claims that this document could be relied on to support agency action and that the subsequent data revealing the magnitude of the EIS' inaccuracy had been carefully considered and did not warrant supplementation were legally weak and void of factual support. The district court's finding that these claims were entirely without color was not clearly erroneous.

The second part of the *Browning Debenture Holders'* standard, improper purpose, is more troublesome. With respect to the Corps, the district court merely stated that since the Corps' defenses were colorless, "it must be concluded that [they] were asserted for an improper purpose." 590 F.Supp. at 1521. This conclusion does not necessarily follow. Although a frivolous position will often signal an improper purpose, we have never held that a frivolous position may be equated with an improper purpose. Such a simple equation would turn the two-part standard into a one-part standard, a step we decline to take. *See, e.g., Colombrito*, 764 F.2d at 133; *PRC Harris*, 700 F.2d at 898; *cf. Gianna Enterprises v. Miss World (Jersey) Ltd.*, 551 F.Supp. 1348, 1360 (S.D.N.Y. 1982). In the absence of a proper finding of improper purpose, the district court's conclusion that the Corps acted in bad faith at the first trial must be reversed.

The State stands in a different light. Although when discussing the first trial the district court merely equated the State's colorless position with an improper purpose, later in its opinion the court clearly identified the State's improper purpose as an attempted coverup. Furthermore,

the court found that the State's bad faith pre-dated the litigation. The court stated:

There is simply no escape from the conclusion that the authorized representatives of the State and FHWA engaged in bad faith conduct prior to the litigation. Moreover, it is the kind of conduct which is most germane to an application for attorneys' fees. Part of the activities of the State and FHWA consisted of an attempt to create a record of purported scientific judgment (*e.g.*, the misleading conclusion in the LMS report) and purported agency discretion (*e.g.*, the October 9, 1980 letter from FHWA to the Corps.). It is perfectly obvious that the intention was to have this "record" available to forestall or rebut a challenge to the agency action. This is exactly the use that has been made of these materials. Defendants have relied heavily on them for their defense in this litigation.

590 F.Supp. at 1524 (footnote omitted); *see also Sierra Club I*, 541 F.Supp. at 1381. We have previously stated our agreement with this basic conclusion. *Sierra Club II*, 701 F.2d at 1047. It certainly is not clearly erroneous. Thus, the district court's finding that the State had an improper purpose must stand.[6]

Given the State's manipulative and deliberately deceptive conduct, we cannot say that the court's decision to award fees on the basis of this bad faith was an abuse of discretion. The State was not a passive participant in this matter. It drafted the 1977 EIS; it controlled the data that showed the inadequacies in the 1977 EIS; it misrepresented the significance of that data; and it actively litigated the issues involved in these lawsuits. Its claims that it owed no duty to anyone ring hollow. At least when it sought federal funding for Westway and drafted the 1977 EIS, and definitely when it became involved in the lawsuit before the district court, the State had a minimum duty to refrain from bad

6. The State appears to claim that this finding only amounts to pre-litigation bad faith and does not amount to bad faith during the litigation. Our response is twofold. First, the distinction the State draws between pre-litigation bad faith and bad faith during trial is not relevant in this case. *See* note 5, *supra*. Second, given the nature of the State's conduct, it is only reasonable to conclude that this improper purpose carried forward through both trials.

faith actions. It failed to fulfill this duty. Therefore, we affirm the district court's award of bad faith fees against the State based on the State's conduct at the two trials.

The district court also awarded fees based on the State's appeal of the merits of the district court's rulings. The State argues that this was error as only this Court may determine whether fees should be awarded for an appeal. The district court rejected this claim, asserting that it had authority to award fees for an appeal under *Perkins v. Standard Oil Co.*, 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970) (per curiam).

▮ We agree with the State's position on this issue. There is a basic distinction between determining entitlement to fees and determining the amount of fees. *Perkins* merely holds that fees expended on an appeal are recoverable under section 4 of the Clayton Act and that the district court may calculate the amount of fees for appellate work. There, the statute, not the district court, determined entitlement to fees. Our opinion in *Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496, 505–06 (2d Cir.1980), is similar to *Perkins*. In *Cohen*, we determined that a party prevailed on an appeal in a civil rights case and remanded to the district court for a calculation of fees. We did not state that the district court could determine entitlement to attorney's fees.

In fact, our court has twice expressed doubts about whether a district court may make the determination of entitlement. In *Cheng v. GAF*, 713 F.2d 886, 892 (2d Cir. 1983), *vacated & remanded on other grounds*, ── U.S. ──, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985), we stated that "[a] rule permitting a district court to sanction [a party] for appealing an adverse ruling might deter even a courageous lawyer from seeking the reversal of a district court decision." More recently, in *Argo Marine Systems, Inc. v. Camar Corp.*, 755 F.2d 1006, 1015 (2d Cir.1985), we stated that "the determination of whether or not to impose [attorneys' fees for a frivolous

appeal] is reserved to the discretion of this Court."

*Cheng* and *Argo Marine Systems* recognize that we, not the district court that rendered the initial decision, should be the judges of whether an appeal is so frivolous as to warrant the imposition of attorneys' fees. If appellees felt that the State's earlier appeal warranted such a sanction, it should have sought relief from us at the time of that appeal. If we had found attorneys' fees appropriate, we could have remanded to the district court for calculation. However, as appellees did not seek relief at that time and we did not consider the issue, we reverse the award of fees for the appeal.

### C. *Calculation of Fees*

The State also argues that the district court's calculation of fees is defective. We agree with the State's claim that the case must be remanded for reconsideration.

▮ First, although the district court indicated that it believed that the hourly rates charged by appellees' attorneys were reasonable, there is no indication that these rates were compared with rates "charged for similar work by attorneys of like skill in the area." *Cohen*, 638 F.2d at 506. Such a comparison "should have been the starting point for determination of a reasonable award." *Id.* In addition, the court did not determine that the hours spent on fisheries issues were reasonable and not redundant. *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir.1984). Such a determination helps to ensure that the fees awarded only compensate for the expenses necessary to counter the bad faith. *Cf. Browning Debenture Holders'*, 560 F.2d at 1088–89.

▮ However, we reject the State's claim that our decision in *New York State Association For Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir.1983), requires that the award of fees be disallowed for failure to submit contemporaneous time

records. The work done for appellees preceded our decision in *Carey*, which by its express terms had only prospective effect. *Id.* at 1154. Appellees provided the district court with "a detailed description of the work carried out and the hours spent on the fisheries issue." *Sierra Club III*, 590 F.Supp. at 1527. This description showed separately the work done for the two trials. *Id.* As appellees' application was not governed by *Carey*, these records are adequate.[7]

In sum, we remand to the district court for a recalculation of the fee award along the lines we have indicated. However, in doing so, further evidence need not be received unless the district court feels that such evidence is necessary in order to fulfill our mandate.

## D. *EAJA*

Appellees cross-appeal the district court's refusal to award fees under the EAJA. The EAJA allows a prevailing "party" in a civil action against the United States to recover its fees unless the court finds that the litigation position of the United States was "substantially justified." 28 U.S.C. § 2412(d) (1982). The term "party" is defined, *inter alia*, as a person whose net worth was less than $1 million at the time the action was commenced. *Id.* at § 2412(d)(2)(B).

The district court found that all of the conditions for an award under the EAJA were satisfied except that one of the non-applicant plaintiffs[8] had a net worth exceeding $1 million. Attributing this plaintiff's ineligibility to all plaintiffs, the court denied the request for fees under the EAJA, stating: "It would appear to be reasonable to consider plaintiffs together for the sake of applying [section 2412(d)(2)(B) ]. Since one of the plaintiffs has a net worth over $1,000,000, recovery is precluded under 28 U.S.C. § 2412(d)." 590 F.Supp. at 1526. Appellees challenge this reading of the statute.

As an initial matter, the entire panel agrees with the district court that all other conditions for an award are satisfied. Unlike an award of fees under the bad faith exception, no improper motive need be shown to recover under the EAJA. All that is at issue is whether the government's actions were substantially justified. The government, which bears the burden of proving this, must show that its case was reasonable, *i.e.*, that it had a reasonable basis in both law and fact. *See Dubose v. Pierce*, 761 F.2d 913, 917–18 (2d Cir.1985). As we explained earlier, the claims made by the Corps and FHWA were not reasonable.

The district court noted that the only issue is whether one plaintiff's ineligibility under the EAJA should be attributed to all plaintiffs. The statute is silent on this point and there is no case law directly on point. Appellees claim that the statute should be read so that only the status of the applicants is considered when determining eligibility for fees. The Corps, naturally, agrees with the district court's position that the court should look beyond the applicants to all of the plaintiffs and that if one plaintiff is ineligible, they are all ineligible.

Judge Oakes and Judge Kearse believe that a point midway between the two extremes advanced by the parties should be adopted. They believe that in determining eligibility, a court must look beyond the applicants to all of the plaintiffs. The court must then determine the number of eligible plaintiffs and award fees based on the ratio of eligible plaintiffs to total plain-

---

**7.** We reject appellees' claim that the district court erred in failing to award fees on non-fisheries issues and in failing to award fees for time spent on the fee application. There was no finding of bad faith on the part of the State, the Corps or FHWA with respect to non-fisheries issues. Thus, there was no reason to award fees for those issues. Indeed, given appellees' initial scattergun approach to this lawsuit, they should

be satisfied that fees were not awarded against them on some of the non-fisheries issues. With respect to the refusal to award fees for the fee application, we see no abuse of discretion on the district court's part.

**8.** Not all of the plaintiffs joined in the fee application, *see* note 1, *supra*.

tiffs, here eleven to twelve. This result is supported by *Citizens Council of Delaware County v. Brinegar,* 741 F.2d 584 (3d Cir.1984). In *Citizens Council,* the court found that two of the four plaintiffs were ineligible for fees. Yet, that court remanded the case for a determination as to the fees the two eligible plaintiffs were entitled to recover. 741 F.2d at 598. Thus, the majority holds that the district court's conclusion that appellees are not entitled to recover under the EAJA is reversed. The case is remanded to the court for a determination of fees recoverable under the EAJA in accordance with the majority view.

I dissent from the majority's construction of the EAJA and would affirm the district court's decision on this point. The EAJA, as a waiver of sovereign immunity, must be strictly construed and not enlarged beyond what a fair reading of the language requires. *See Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); *Lauritzen v. Lehman,* 736 F.2d 550, 555–56 (9th Cir. 1984). I believe that the majority's reading of the statute enlarges it beyond what a fair reading requires.

The statute itself is silent on the point in question. However, I believe that the statute's policy supports the district court's interpretation. The EAJA was passed for a specific purpose; to ensure that parties would not be prevented from contesting government action simply because they could not afford to litigate the matter. *See, e.g., Boudin v. Thomas,* 732 F.2d 1107, 1112–13 (2d Cir.1984); *Citizens Council,* 741 F.2d at 589–90. When a group of twelve plaintiffs, one of whom has a net worth of over $1 million, join together, congressional concern about access to the courts is not implicated. Indeed, it seems incongruous to hold that if the ineligible plaintiff alone challenged Westway, fees could not be awarded under the EAJA, but because the ineligible plaintiff was joined by less wealthy friends, fees may be awarded. Thus, strictly construing the statute in light of its purpose, I would affirm the district court's decision that ap-

pellees may not recover fees under the EAJA.

## CONCLUSION

In sum, we affirm the district court's finding that the State's bad faith justifies a shifting of fees under the bad faith exception to the American Rule. We reverse the award of fees based on the State's appeal of the merits of the district court's rulings. We reverse the court's finding that the Corps acted in bad faith. We reverse the court's holding that appellees, cross-appellants are ineligible for a recovery of fees under the EAJA. Finally, we remand the case for reconsideration and adequate explanation of the fees awarded against the State and for computation of fees against the Corps and FHWA under the EAJA. The parties shall bear their own costs.