**DERICKSON COMPANY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 84–1998.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1985.

Decided Sept. 25, 1985.

---

Robert L. Grossman, Minneapolis, Minn., for petitioner.

Corinna Metcalf of the N.L.R.B., Washington, D.C., for respondent.

Before ROSS and BOWMAN, Circuit Judges, and SCHATZ,* District Judge.

BOWMAN, Circuit Judge.

Derickson Company, Inc. (Derickson) petitions this Court to set aside an order of the National Labor Relations Board denying Derickson's application for attorneys' fees and expenses under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504(c)(2).[1] This case presents the question whether the NLRB abused its discretion in deciding

---

* The HONORABLE ALBERT G. SCHATZ, United States District Judge for the District of Nebraska, sitting by designation. Judge Schatz participated in both the oral argument and the subsequent conference of the three judges. The decision reached by the judges in conference was unanimous. Judge Schatz died on April 30, 1985.

1. Section 504 was repealed effective October 1, 1984. Pub.L. No. 96–481, § 203(c), 94 Stat. 2321, 2327 (1980). Adversary adjudications initiated prior to that date, however, remain subject to the provisions of § 504 until final disposition of those matters. *Id.* Sec. 504 was reinstated on August 5, 1985 to apply retroactively to any cases commenced on or after October 1, 1984. Pub.L. No. 99–80, §§ 6 & 7, 99 Stat. 183, 186 (1985).

that the NLRB General Counsel was substantially justified in revoking a settlement agreement on the basis of "newly discovered evidence" or subsequent alleged unfair labor practices. Our review focuses on whether the General Counsel had a reasonable basis in law and fact for his position in the underlying proceeding. Because we have concluded that the General Counsel's position was not reasonable under existing law, we set aside the order of the Board and remand petitioner's application for attorneys' fees and expenses to the Board for the determination of an appropriate award.

## I.

On June 23, 1981, a charge was filed with the National Labor Relations Board's Regional Office in Minneapolis, Minnesota alleging that Derickson had violated sections 8(a)(1) and (3) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1) and (3).[2] The gist of the charge was that Derickson had "interfered with, restrained, and coerced" its employees in violation of the employees' rights under section 7 of the Act, 29 U.S.C. § 157, and had discharged three employees because of their union activities. The NLRB investigated the charge and concluded that there was reasonable cause to believe that Derickson had violated section 8(a)(1) of the Act but that there was insufficient evidence to establish a violation in regard to the discharges. Subsequently, Derickson and the charging party reached a settlement agreement which provided in pertinent part that "[the] Regional Director shall decline to issue a Complaint herein (or a new Complaint if one has been withdrawn pursuant to the terms of this Agreement)." The NLRB Regional Director thereafter approved the settlement agreement, and on November 10, 1981 informed Derickson that its compliance with the agreement was

satisfactory and that the case had been closed.

During the course of its investigation of the June 23, 1981 charge, the NLRB had interviewed and taken an affidavit from Nancy Phillips, a Derickson employee. Phillips stated in her affidavit that the company had no knowledge of the union activities of the three discharged employees named in the charge prior to their termination. On January 22, 1982, Phillips, after being discharged by Derickson earlier in the month, wrote a letter to the NLRB Regional Director claiming that she had perjured herself in the affidavit she gave during the investigation of the June 23, 1981 charge. She stated in the letter that Derickson knew of the employees' union activities before their discharge because she had informed company officials of those activities. In addition, Phillips filed a charge of her own with the NLRB on February 4, 1982 alleging that her discharge also was in violation of the Act.

After a full investigation of Phillips' charge, the NLRB requested that Phillips withdraw the charge because the allegations contained therein could not be substantiated. The NLRB concluded, however, that a complaint should issue with respect to a separate alleged violation of section 8(a)(1) that was discovered during the investigation. Therefore, Phillips' charge was amended on May 5, 1982 to allege only the section 8(a)(1) violation. This violation consisted of a single phone call between Derickson's president and a former employee.

On the basis of what the NLRB Regional Director characterized as "newly discovered evidence" an order was issued "revoking" approval of the settlement agreement under which the June 23, 1981 charge had been terminated. A consolidated complaint containing the allegations of the June 23, 1981 charge and the May 5, 1982 amended

---

**2.** Section 8 of the Act provides, in relevant part:
    (a) It shall be an unfair labor practice for an employer—
    (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

    (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

charge then was issued. The "newly discovered evidence" referred to in the order was the information supplied in Phillips' January 22, 1982 letter. After Derickson moved to dismiss the complaint on the ground that the settlement agreement could not be set aside because of newly discovered evidence, the Regional Director amended the revocation order to include the subsequent alleged section 8(a)(1) violation as an additional basis for its action.

The Administrative Law Judge (ALJ) before whom the case was heard indicated that he would rule on Derickson's motion to dismiss after hearing the testimony regarding the subsequent section 8(a)(1) violation contained in the amended charge and after reviewing the new evidence. After this hearing and before the ALJ issued his ruling on the motion to dismiss, the NLRB General Counsel appealed the ALJ's decision not to consider all evidence relating to the amended consolidated complaint, including testimony relevant to the original discharge allegations in the June 23, 1981 charge. The Board ordered full presentation of the case and remanded for further proceedings.

Before the proceedings could resume, however, the Board issued its decision in *Winer Motors, Inc.*, 265 NLRB 1457 (1982), overruling *Silver Bakery of Newton*, 150 NLRB 421 (1964).[3] The Board in *Winer Motors* held that a withdrawn charge may not be reinstated beyond the six-month time period mandated by section 10(b) of the Act, 29 U.S.C. § 160(b). The reinstatement of the June 23, 1981 charge by the Regional Director in May 1982 was therefore untimely and, as required by *Winer Motors*, the General Counsel moved to withdraw the consolidated complaint and to reinstate the settlement agreement. The motion was granted by the ALJ on May 5, 1983.

On June 7, 1983, Derickson filed an application for an award of attorneys' fees and expenses under the EAJA. Derickson claims that it is entitled to reimbursement for attorneys' fees and expenses incurred in defending the action brought by the General Counsel and in pursuing its application for those costs under the EAJA. The ALJ determined that the application should be dismissed because the General Counsel's position in the underlying proceeding was substantially justified. The Board affirmed the ALJ's ruling. We set aside the Board's order and remand to the Board for a determination of the amount of fees and expenses to be awarded.

## II.

### A.

█ The EAJA provides that an adjudicative officer conducting an adversarial adjudicatory proceeding shall award attorneys' fees and other expenses to a prevailing party unless the agency's position "as a party to the proceeding was substantially justified or that special circumstances make an award unjust." 5 U.S.C. § 504(a)(1); *see* 28 U.S.C. § 2412(d)(3). The test of substantial justification is a practical one, *viz.*, whether the agency's position was reasonable both in law and fact. *Foley Construction Co. v. U.S. Army Corps of Engineers*, 716 F.2d 1202, 1204 (8th Cir.1983), *cert. denied*, ── U.S. ──, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). The agency bears the burden of demonstrating the justification for its position and must make a "strong showing" to meet that burden. *Iowa Express Distribution, Inc. v. NLRB*, 739 F.2d 1305, 1308 (8th Cir.), *cert. denied*, ── U.S. ──, 105 S.Ct. 595, 83 L.Ed.2d 704 (1984); *Cornella v. Schweiker*, 728 F.2d 978, 982 (8th Cir.1984). Unless the agency meets its burden of demonstrating the substantial justification for its position, the denial of attorneys' fees and expenses by the agency is an abuse of discretion and may be modified by

---

**3.** The Board held in *Silver Bakery of Newton*, 150 NLRB 421 (1964), *enforcement denied*, 351 F.2d 37 (1st Cir.1965), that the six-month period in § 10(b) of the Act, 29 U.S.C. § 160(b), related only to the filing of charges and that the General Counsel could reinstate withdrawn charges when equitable considerations permitted so long as the charges were timely filed.

this Court. *Iowa Express Distribution,* 739 F.2d at 1308; 5 U.S.C. § 504(c)(2).

### B.

In addressing whether the NLRB General Counsel's position was substantially justified, we turn now to the prevailing precedent regarding settlement agreements at the time of the underlying proceeding. The Board has encouraged voluntary settlement agreements both to ensure enforcement of the Act and to prevent inefficient use of Board resources. *U.S. Contractors, Inc. v. NLRB,* 697 F.2d 692, 695 (5th Cir. 1983). Regarding the revocation of settlement agreements, this Court has stated that "a settlement agreement can be set aside and presettlement violations found if there has been a breach of an agreement or a subsequent independent violation of the Act by a party to the agreement." *NLRB v. Arrow Specialties, Inc.,* 437 F.2d 522, 526 (8th Cir.1971); *see Wallace Corp. v. NLRB,* 323 U.S. 248, 254–55, 65 S.Ct. 238, 241–42, 89 L.Ed. 216 (1944); *Southwestern Bell Telephone Co. v. NLRB,* 667 F.2d 470, 476 (5th Cir.1982) (Board legally and morally bound by terms of settlement agreement that it participates in and approves).

The Board has been equally clear in this respect. In *Hollywood Roosevelt Hotel Co.,* 235 NLRB 1397, 1397 (1978), the Board stated as a "general rule" that a "settlement agreement bars subsequent litigation of presettlement conduct alleged to constitute unfair labor practices" when the parties have complied with the agreement. The Board delineated the following exceptions to the rule: when prior violations were "unknown to the General Counsel, not readily discoverable by investigation, or specifically reserved from the settlement by the mutual understanding of the parties." *Id.* at 1397; *see Steves Sash & Door Co.,* 164 NLRB 468, 473 (1967).

### III.

Since the General Counsel concedes that Derickson complied with the settlement agreement and the agreement does not reserve any violations from settlement, our inquiry revolves around a determination of whether some other basis exists that is sufficient to justify going behind the settlement agreement. The General Counsel seeks to rely on *Universal Building Services, Inc.,* 234 NLRB 362 (1978) and *Union Electric Co.,* 214 NLRB 320 (1974) to support its actions against Derickson.[4] Neither of these authorities, however, is apposite in relation to the present case.

We find the General Counsel's reliance on *Union Electric* inappropriate in the present situation because the parties in that case had not reached a settlement agreement. In *Universal Building Services,* a settlement agreement was entered into providing that the employer would not commit "like or related" unfair labor practices. The day after the settlement agreement was approved by the NLRB Regional Director another charge was filed alleging a different violation of the Act prior to the settlement agreement. The Board held that the Regional Director properly set aside the agreement because he "was unaware of the presettlement misconduct at the time of his approval." 234 NLRB at 362.

The instant case is distinguishable from *Universal Building Services* by virtue of the Regional Director's explicit knowledge of the discharge allegations before he approved the settlement agreement. Simply because the NLRB had inadequate evidence at the time the settlement agreement was made with Derickson does not warrant the General Counsel's subsequent attempt to void that agreement. *See Southwestern Bell,* 667 F.2d at 476. Unlike *Universal Building Services,* where the additional unfair labor practices allega-

---

**4.** The General Counsel also cites to numerous Board cases giving the General Counsel "virtually unlimited discretion" under the Act to reinstate withdrawn or dismissed charges. *See, e.g., United Technologies Corp.,* 260 NLRB 1430 (1982); *California Pacific Signs, Inc.,* 233 NLRB 450 (1977). None of the cited cases, however, deal with the reinstatement of charges that have been withdrawn pursuant to a settlement agreement.

tions came to light only after approval of the settlement agreement, the Regional Director here acted with full appreciation of the discharge allegations but decided that settlement was appropriate because of the NLRB's inability to substantiate that the discharges occurred for impermissible reasons. While prior violations that are unknown to the General Counsel and that are not readily discoverable are a sufficient basis to set aside an agreement, *Hollywood Roosevelt Hotel Co.*, 235 NLRB at 1397, the same is not true for violations known to the General Counsel at the time of settlement. *Cf. id.* n. 5.

The Regional Director originally claimed that "newly discovered evidence" also was an adequate ground for his revocation of the settlement agreement and the General Counsel advances this rationale here as well. Even assuming, *arguendo*, that Phillips' recantation of her original affidavit constitutes "newly discovered evidence," the General Counsel has cited no authority to support his contention that the discovery of additional evidence regarding violations known of at the time of settlement can justify revoking a settlement agreement. Indeed, to allow the revocation of settlement agreements on the basis of newly discovered evidence would frustrate the announced policy of the Board to encourage voluntary settlements. *See U.S. Contractors*, 697 F.2d at 695. If an employer is not reasonably assured that the Board is bound by the terms of a settlement agreement it enters into and approves, absent some duplicity or fraud on the part of the employer, the incentive to cooperate is greatly reduced.

The remaining justification for revoking the settlement agreement is the alleged subsequent violation of section 8(a)(1) of the Act contained in the May 5, 1982 amended charge. The Regional Director initially listed only "newly discovered evidence" in his revocation order as a basis for going behind the settlement agreement.

The order later was amended to include the alleged section 8(a)(1) violation, consisting of the single phone call between Derickson's president and a former employee. In the General Counsel's March 15, 1983 motion to the ALJ to reinstate the settlement agreement and to dismiss the alleged subsequent section 8(a)(1) violation, the alleged violation was referred to as "both isolated and *de minimus.*"

■ We believe the General Counsel knew or should have known that this alleged violation was *de minimus* in nature at the time the settlement agreement was revoked. The Board has stated unambiguously that it does not consider an "isolated act, standing alone and unrelated to any other anti-union conduct of [an employer], to be sufficient to support a finding of interference, restraint, or coercion under the Act." *Rice-Stix of Arkansas, Inc.*, 79 NLRB 1333, 1338 (1948). In *Rice-Stix* the Board concluded that an isolated subsequent violation of the Act did not warrant "going behind the settlement agreement and using [an employer's] conduct prior thereto as a basis for finding that the [employer] ha[d] engaged in unfair labor practices before or after the agreement." *Id.* at 1337. Because the General Counsel knew or should have known that the section 8(a)(1) violation alleged in the amended May 5, 1982 charge was *de minimus* in nature, his decision to revoke the settlement agreement cannot be substantially justified on this basis.

### IV.

Finding no convincing legal justification for going behind the settlement agreement in this case, we conclude that the General Counsel has not made the "strong showing" of substantial justification necessary to meet his burden. *Iowa Express Distribution*, 739 F.2d at 1308; *Cornella*, 728 F.2d at 982.[5] We therefore set aside the Board's decision and remand to the Board

**5.** Because we find that the General Counsel's position was not legally justifiable, we do not address the issue of whether the General Counsel had a reasonable basis in fact for his position in the proceedings against Derickson.

for the determination of the attorneys' fees and expenses to be awarded.