Samuel RIDDLE, Plaintiff-Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Defendant-Appellee.

No. 86-5228.

United States Court of Appeals,
Sixth Circuit.

Submitted Dec. 8, 1986.

Decided May 1, 1987.

Rehearing En Banc Granted and Opinion Vacated July 9, 1987.*

Stuart E. Warren, Western Kentucky Legal Services, Owensboro, Ky., for plaintiff-appellant.

Alexander Taft, U.S. Atty., Louisville, Ky., Suzanne M. Warner, U.S. Atty.'s Office, Louisville, Ky., for defendant-appellee.

Before ENGEL and JONES, Circuit Judges, and EDWARDS, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Samuel Riddle appeals from the district court's denial of attorney's fees under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (1982 & Supp. III 1985); 28 U.S.C. § 2412 (1982 & Supp. III 1985). The district court based the denial upon its de-

* See 823 F.2d 164.

termination that the position of the United States was "reasonable," and so was substantially justified. This presents us with the question whether the legislative history of the 1985 reenactment of the EAJA obliges us to change our definition of substantially justified to something more than merely "reasonable." We conclude that a revised definition is called for, and reverse the district court's order denying attorney's fees.

## I.

The claimant, Samuel Riddle, was born December 22, 1942. He worked as a self-employed farmer until December 1981, when he was injured in a serious automobile accident. Since the accident, Mr. Riddle has suffered from double vision due to a traumatic bilateral sixth cranial nerve paralysis, a ventilatory impairment due to orthopedic problems, neck pain and limited neck flexibility due to a fractured neck, and residual pulmonary problems.

Mr. Riddle applied for disability benefits on May 6, 1982. The application was denied initially and again on reconsideration. After conducting a hearing and reviewing the evidence, the administrative law judge concluded that the plaintiff could perform sedentary work and, therefore, was not disabled. This determination became the final decision of the Secretary when the Appeals Council denied review on July 1, 1983.

Mr. Riddle appealed this final decision of the Secretary to the district court, and the district court granted summary judgment in claimant's favor. The district court pointed out that all of Mr. Riddle's treating physicians documented organic causes for his alleged disability. Dr. O'Bryan, his pulmonary specialist, opined that claimant was severely disabled and without possibility of returning to work within one year. He felt that Mr. Riddle was orthopedically disabled, with a permanent ventilatory impairment of a severe nature. Dr. Binegar, who had performed a muscle transplant on claimant's right eye, noted that Mr. Riddle could only be comfortable when wearing an eyepatch. He therefore advised claimant

not to work around heavy equipment or to perform tasks requiring binocular vision. Another treating physician, Dr. Riherd, recommended that claimant begin range of motion therapy, but said that claimant no longer needed to wear a neck brace. This doctor expressed no opinion regarding Mr. Riddle's ability to return to work.

The Secretary conceded that claimant could no longer perform his previous work. The Secretary contended that Mr. Riddle nevertheless had the residual functional capacity for sedentary work. The district court rejected this contention as unsupported by substantial evidence:

The record contains only three pieces of evidence favorable to the Secretary, none of which demonstrates the residual functional capacity to perform sedentary work. Those three pieces of evidence are: (1) the examination of Dr. R. Taylor (Tr. 216–217); (2) the examination of Dr. Samuel Weeks (Tr. 226); and (3) the finding of the Administrative Law Judge whereas [sic] plaintiff's complaints of pain were found not credible (Tr. 75 Finding No. 4).

As previously mentioned the notes of Dr. Taylor are in large part not legible. Plaintiff's various ailments are scribbled on a report, and as far as can be determined there was no medical evidence demonstrating plaintiff's ability to engage in sedentary employment nor was there a statement by Dr. Taylor that plaintiff possessed the residual functional capacity to engage in sedentary employment. As such this report (the record is unclear as to whether Dr. Taylor actually examined plaintiff) cannot constitute substantial evidence for finding plaintiff able to perform sedentary labor.

The consultative examination rendered by Dr. Weeks without benefit of a personal examination consists of a one sentence report: "Severe now but should *not* last for 12 months." The report is not accompanied by medical findings. This statement conflicts with the Secretary's findings as the Administrative Law Judge concedes plaintiff has a se-

vere impairment which precludes a return to his former employment.

Lastly is the conclusion of the Administrative Law Judge that plaintiff's pain is not credible. Although the Administrative Law Judge's conclusions are to be given deference whereas plaintiff's credibility is concerned, *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383 (6th Cir.1978), this finding must be supported by some evidence. *Weaver v. Secretary of Health and Human Services,* 722 F.2d 310 (6th Cir.1983). Here there is no evidence of record which conflicts with plaintiff's complaints of pain. Conversely, the evidence overwhelmingly documents their organic source.

As such the Secretary has failed to establish by substantial evidence that plaintiff has the residual functional capacity to engage in sedentary employment.

*Riddle v. Heckler,* No. C83–0238–O(B), slip op. at 8–10 (W.D. Ky. Oct. 23, 1985).

Following this reversal of the Secretary's denial of benefits, claimant petitioned for an award of $1,350 in attorney's fees under the EAJA. The district court denied the petition, briefly stating that although the Secretary's decision was not supported by substantial evidence, the Secretary's position was reasonable and, therefore, substantially justified. Claimant appeals, arguing in part that subsequent to the 1985 reenactment of the EAJA the Secretary's position should not be deemed substantially justified merely because it is reasonable.

## II.

Congress, recognizing the economic deterrents to contesting governmental action, passed in 1980 the Equal Access to Justice Act. *See* 28 U.S.C. § 2412(d). The EAJA specifically provides that a court "shall award" to a prevailing party in a civil suit (other than a tort action) brought by or against the United States the fees and other expenses incurred by that party unless the court finds "that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

Had this statute not yet been interpreted, we would begin our interpretation of the 1980 statute by following the canons of statutory construction and reading the plain language while ignoring momentarily the legislative history of the statute. *See, e.g., United States v. Apfelbaum,* 445 U.S. 115, 121–23, 100 S.Ct. 948, 952–53, 63 L.Ed.2d 250 (1980). Applying this hypothetical *de novo* construction, we note at the outset that the syntax of the statute suggests that the presumption is that a prevailing party will receive attorney's fees unless and until the government demonstrates that it falls within the exception set forth—that its position was substantially justified or special circumstances exist. This leads to the question of what the term "substantially justified" would mean if unexplicated by legislative history. The adjective "substantial," while connoting various meanings, generally indicates something that is "sturdy," "solid," or "firm," something that is not "imaginary" or "illusive." 2 *Webster's Third New International Dictionary Unabridged* 2280 (1965). Thus, if we were to read the term "substantially justified" outside of any context, we might assume that it indicated something firmly grounded or solidly based.

The courts, however, were not faced with the task of defining "substantially justified" in a vacuum. The legislative history behind the 1980 enactment of the EAJA suggested how that term might be interpreted—albeit the history pointed to two different interpretations. The House Report proposed that:

> The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made.

H.R.Rep. No. 96–1418, 96th Cong., 2nd Sess. 10, *reprinted in* 1980 U.S. Code Cong. & Admin. News 4984, 4989. This legislative history appears to have been the basis for this circuit's current definition of "substantially justified." *See Trident Marine Const., Inc. v. District Engineer,* 766

F.2d 974, 980 (6th Cir.1985) ("Whether or not the government's position is substantially justified is basically a question of reasonableness."). However, the Court of Appeals for the District of Columbia held that another aspect of the legislative history called for a "test ... more stringent than 'one of reasonableness.'" *Spencer v. NLRB,* 712 F.2d 539, 558 (D.C.Cir.1983) (citation omitted). This legislative history consisted of the Senate Judiciary Committee's *rejection* of an amendment that would have changed the pertinent language from "substantially justified" to "reasonably justified." S.Rep. No. 253, 96th Cong., 1st Sess. 1, 4 (1979). In light of the ambiguous legislative history, both the Sixth Circuit's test and the D.C. Circuit's test were supportable, although the D.C. Circuit's standard might have comported more with the plain language of the statute.

Section 2412(d) as passed in 1980, however, was avowedly experimental. It was subject to a sunset provision; unless it was reenacted before October 1, 1984, it would be repealed. *See* Pub.L. No. 96–481, tit. II, § 204(c), 94 Stat. 2329 (1980). An amended and permanent version of the Act was passed by both the House and the Senate on October 11, 1984, but it was vetoed by President Reagan in November of 1984 (on grounds not relevant here). Eventually, a permanent version of the Act was passed in 1985. The House Report on this present Act states that it:

> extends and improves the Equal Access to Justice Act, which expands the liability of the United States for attorneys fees and other expenses to certain parties who prevail against the United States in certain administrative and court proceedings. Portions of the Act expired on October 1, 1984. H.R. 2378 covers the period between that date and enactment and makes the law permanent.

H.R.Rep. No. 99–120, 99th Cong., 1st Sess. 8, *reprinted in* 1985 U.S. Code Cong. & Admin. News 132, 136.

The significance of the separate passages of the Act in 1980 and in 1985 is that the legislative history contemporaneous to the 1985 passage indicates that our circuit, as well as other circuits, has incorrectly interpreted the language of section 2412(d). The House Report for the 1985 Act notes that only $3.0 million was awarded under the Act between 1981 and 1984, whereas Congress had expected at least $100 million per year to be awarded. The report then declares that, "[p]art of the problem in implementing the Act has been that agencies and courts are misconstruing the Act. Some courts have construed the 'position of the United States' which must be 'substantially justified' in a narrow fashion which has helped the Federal Government escape liability for awards." *Id.* at 9, 1985 U.S. Code Cong. & Admin.News at 137. Accordingly, the report set forth Congress' intended definitions of the "position of the United States" and "substantially justified." The report explicitly approves of the decisions of those courts, such as the D.C. Circuit, which have held that "substantial justification" requires more than mere reasonableness. It then states that:

> Because in 1980 Congress rejected a standard of "reasonably justified," in favor of "substantially justified," the test must be more than mere reasonableness.

> Especially puzzling, however, have been statements by some courts that an administrative decision may be substantially justified under the Act even if it must be reversed because it was arbitrary and capricious or was not supported by substantial evidence. *Agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act. Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under the Act.*

*Id.* at 9–10, 1985 U.S.Code Cong. & Admin. News at 138 (emphasis added and footnote omitted).

At first glance, this language in the legislative history would seem to preclude any further discussion as to whether Congress

desired a reasonableness standard.[1] But three congressmen expressed on the floor varying degrees of dissatisfaction with a small part of the House Report. Congressman Kindness quoted the portion italicized *supra* as a "gratuitously authoritarian overstatement [which] appears to be the only error ... in the report." 131 Cong. Rec. H4763 (daily ed. June 24, 1985). He explained that he disagreed with the quoted statement's implication that "a finding of an agency action that was not supported by substantial evidence would automatically entitle a prevailing party to fees or would establish a presumption of entitlement to fees." *Id.* He nonetheless conceded that:

> The committee recognizes the close relationship between the concepts, and the fact that a finding by the Government was not supported by substantial evidence should be accorded careful scrutiny. But indeed the *quoted two sentences* from the bottom of page 9 and the top of page 10 of the report do not represent a clear or a [sic] appropriately explanatory statement of the intent of the committee in the reporting of H.R. 2378.

*Id.* (emphasis added). Congressman Moorehead indicated his agreement that there were different standards for substantial evidence and substantial justification. *Id.* Congressman Kastenmeier followed up these comments with his assurance that the committee report was not intended to suggest that the "Government may only avoid fees by prevailing in litigation." *Id.*

When questioned in the Senate about the same two sentences, Senator Grassley explained:

> I want to make it clear that the EAJA case over the fees issue is a separate and distinct inquiry. Just because an agency loses on the merits of the case doesn't

mean that it is automatically going to be liable for a fee award. The EAJA does not provide for automatic fee shifting. *However,* I would say that where the agency action is found by a court to be arbitrary and capricious or where there is little or no factual support for the agency action, the Government—as a practical matter—has its work cut out for it to prove substantial justification. *Indeed,* in the case of an arbitrary and capricious finding, I believe the plain meaning of the words strongly suggest [sic] that the Government was not substantially justified. I believe that this view is consistent with the committee report on S. 919, a bill we passed unanimously in the closing days of the 98th Congress.

131 Cong.Rec. S9993 (daily ed. July 24, 1985) (emphasis added). Senator Thurmond expressed his agreement with Senator Grassley, although he differed on the effect of an "arbitrary and capricious" finding. *Id.*

We have detailed these comments on the 1985 legislative history because they demonstrate that no official in Congress expressed displeasure with the House Report's rejection of the reasonableness standard.[2] Instead, the congressmen and senators rather carefully limited their criticism to the part of the House Report suggesting that "agency action found to be ... unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act."

The courts which have taken into account this 1985 legislative history have not equated the term "substantially justified" with the term "substantial evidence;" but neither have most courts ignored Congress' rejection of the reasonableness standard.

---

1. I would note that the legislative history discussed here was indeed *contemporaneous* to the 1985 enactment of the EAJA, and so the dissent's criticism of reliance on "legislative observations" of a "subsequent Congress" do not render this 1985 legislative history irrelevant. Not even those courts, discussed *infra,* which chose to retain their former reasonableness standard considered the 1985 legislative history to be irrelevant.

2. Contrary to the dissent's apparent belief, an analysis of both the House Report and comments on the floor is a somewhat standard means of interpreting legislative history. *See e.g., Train v. Colorado Pub. Int. Research Group,* 426 U.S. 1, 9–23, 96 S.Ct. 1938, 1942–48, 48 L.Ed.2d 434 (1976); *Mills v. United States,* 713 F.2d 1249, 1252–53 (7th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984).

The Eighth Circuit, in *United States v. 1,378.65 Acres of Land,* 794 F.2d 1313 (8th Cir.1986), reconciled the 1980 legislative history with the 1985 legislative history by requiring the government now to show "not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." *Id.* at 1318. The Federal Circuit, in *Gavette v. Office of Personnel Management,* 785 F.2d 1568 (Fed.Cir.1986) (en banc), declared that "it is clear that substantial justification is not simply equivalent to reasonableness." *Id.* at 1579. The court went on to hold that the government must show that it was *clearly* reasonable:

> The Government must show that it has not "persisted in pressing a tenuous factual or legal position, albeit one not wholly without foundation."

*Id.* (quoting *Gava v. United States,* 699 F.2d 1367, 1375 (Fed.Cir.1983) (Baldwin, J., dissenting)). *See also Lee v. Johnson,* 799 F.2d 31, 38 & n. 7 (3rd Cir.1986) (recognizing 1985 Congress' requirement of a test more stringent than reasonableness, but asserting that Third Circuit already has a more stringent test). *Cf. Federal Election Commission v. Rose,* 806 F.2d 1081 (D.C. Cir.1986) (refusing to equate "arbitrary and capricious" or "lack of substantial evidence" with "lack of substantial justification," but continuing to use a "slightly more than reasonable" standard rather than a mere "reasonableness" standard). *But see Russell v. National Mediation*

*Board* 775 F.2d 1284, 1289 (5th Cir.1985) (finding 1985 legislative history conflicting and inconclusive and so adhering to standard of reasonableness); *Phil Smidt & Son, Inc. v. NLRB,* 810 F.2d 638, 642 n. 5 (7th Cir.1987) (agreeing with Fifth Circuit that floor comments conflicted with the House Report).[3]

Unlike the Fifth and Seventh Circuits, we do not consider the 1985 legislative history to be inherently conflicting. *In toto,* the report and the statements on the floor indicate that in 1985 Congress was merely attempting to achieve the "middle ground" it had hoped to delineate in 1980. It did not want fees to be awarded each time a party prevailed against the government; nor did it want fees to be awarded only when the government's position was frivolous. *See* H.R.Rep. No. 96–1418 at 13–14, 1980 U.S. Code Cong. & Admin. News at 4953, 4992–93. The problem with a reasonableness test is that it may lead to awards being given only when the government's position is frivolous, for "reasonable" simply means "not absurd," "not ridiculous," "not conflicting with reason." 2 *Webster's Third New International Dictionary Unabridged* 1892 (1965).

Accordingly, we see no reason to ignore the clear legislative intent to reject the reasonableness test. To construct the standard most likely to accord with Congress' intentions, we return to the plain language of the statute—language which requires not that the government's position be *reasonably* justified, but that it be *sub-*

---

**3.** I do not consider persuasive the other circuit decisions cited by the dissent since none of those opinions indicated even an awareness of the 1985 legislative history at issue here. The decisions in *United States v. Yoffe,* 775 F.2d 447, 450 (1st Cir.1985) (reasonableness standard); *Weakley v. Bowen,* 803 F.2d 575, 577 (10th Cir. 1986) (reasonableness standard); and *Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1497 (11th Cir.) (more than reasonableness standard), *rev'd in part on other grounds,* 804 F.2d 1573 (1986), all indicated an awareness that the EAJA had been reenacted in 1985, but none gave any indication that the decision-makers were aware of the relevant 1985 legislative history. Therefore, rather than analyze in any depth the test for "substantially justified," those courts simply continued to use the definitions formulated under the 1980 EAJA. The deci-

sions in *Sierra Club v. United States Army Corps of Engineers,* 776 F.2d 383, 393 (2d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986), and *League of Women Voters v. FCC,* 798 F.2d 1255, 1257 (9th Cir.1986), gave no indication that those courts were even aware that the EAJA had been reenacted in 1985. Similarly, the "intra-circuit conflicts" in the Third, Eighth and D.C. Circuits, pointed out by the dissent, arise not from differing interpretations of the 1985 legislative history, but from one panel's consideration of that history while another panel appeared to be unaware of that history's existence. In such circumstances, the decisions of the panels which failed to note the 1985 reenactment should not diminish the persuasiveness of the opinions taking into account the 1985 legislative history.

*stantially* justified. We hold that in order to be substantially justified, the government's position must have *more* than a "reasonable basis" in law and fact. Instead, the government's position must be firmly grounded or solidly based in law and fact. Such a standard in no way equates the "substantial evidence" test with the "substantially justified" test, but at the same time it does require government agencies to have more than a modicum of support for the positions they take against private individuals. We believe this is what Congress intended.

■ At last returning to the case before us, we note that the district court found that *none* of the evidence contributed to the Secretary's burden of proving that Mr. Riddle was capable of performing sedentary work. Given that the Secretary had conceded that Mr. Riddle could not return to his previous work, the absence of any evidence demonstrating the claimant's ability to perform other work leads us to conclude that there was not a solid factual basis for the Secretary's position.

We therefore REVERSE the district court's order and REMAND for the award of attorney's fees.

ENGEL, Circuit Judge, dissenting.

Because I believe that this court's decision in *Trident Marine Construction, Inc. v. District Engineer, United States Army Corps of Engineers,* 766 F.2d 974 (6th Cir. 1985), is binding precedent for the definition of the term "substantially justified," and that the majority's treatment of the legislative history of the 1985 amendments to the Equal Access to Justice Act, 28 U.S.C. § 2412, conflicts with a number of Supreme Court decisions, I respectfully dissent.

I respectfully suggest that if the majority concluded that *Trident Marine* should no longer be followed in this circuit, it was under a duty to seek *en banc* reconsideration of the question. Even more important, its reliance upon a legislative report filed five years after the enactment of the pertinent language is contrary to the express prohibition of the Supreme Court in *Oscar*

*Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), and does not justify ignoring our practice requiring *en banc* consideration.

The Equal Access to Justice Act (EAJA) allows a prevailing party to recover litigation costs against the United States unless "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The EAJA was "designed to encourage small private plaintiffs and defendants to persevere against or resist the U.S. government if the government takes an unjustified [administrative or] litigating position. And, perhaps more importantly, the statute is meant to discourage the federal government from using its superior litigating resources unreasonably...." *Battles Farm Company v. Pierce,* 806 F.2d 1098, 1101 (D.C.Cir.1986) (footnotes omitted). Under the EAJA, it is not enough for a party to "prevail" against the government in order to obtain attorney fees. If the government shows that its position was "substantially justified," a court cannot award attorney fees. Congress initially enacted the statute in 1980 with a sunset provision and reenacted it with amendments in 1985.

The question before us is whether the Secretary's position in this case was "substantially justified." That term is unique to this statute. Until 1985, each circuit that had considered the question, with the exception only of the District of Columbia Circuit, defined "substantially justified" to mean "reasonable." *See United States v. Yoffe,* 775 F.2d 447, 449 (1st Cir.1985) and cases cited therein. The court explicitly adopted the majority position in *Trident Marine, supra.*

Appellant argues that whatever "substantially justified" may have meant before 1985, the 1985 amendments and legislative history altered the standard. Although the 1985 amendments changed portions of the Act, the amendments retained the original language precluding attorney fees if the position of the United States was "substantially justified." Thus, in my view, the amendments do not support appellant's po-

sition. In 1980, the relevant portions of section 2412 provided:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*

28 U.S.C. § 2412(d)(1)(A) (1982) (emphasis added). The relevant portions of the statutory language after the 1985 amendments are:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*
>
> * * * *
>
> (D) "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings[.]

28 U.S.C. §§ 2412(d)(1)(A), (d)(2)(D) (emphasis added). While the phrase "including

proceedings for judicial review of agency action" was added to subsection (d)(1)(A), plainly the underscored language relating to "substantially justified" has remained unchanged since *Trident Marine* interpreted it. The majority never considers this statutory language, but simply moves on to the legislative history of the 1985 amendments. Certainly, "this is a case for applying the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute." *Greenwood v. United States,* 350 U.S. 366, 374, 76 S.Ct. 410, 415, 100 L.Ed. 412 (1956).

The only important change the 1985 amendments made, the addition of subsection (d)(2)(D), affected the precedential value of *Trident Marine* in but one respect. Before the enactment of that subsection, the circuits were divided on the meaning of the term "position of the United States." *See Temp Tech Industries, Inc. v. NLRB.* 756 F.2d 586, 589–90 (7th Cir.1985) and cases cited therein. The dispute centered on whether the term referred only to the litigating position of the government or to the government's administrative action as well. In *Trident Marine,* 766 F.2d at 978, this court adopted the position of six other circuits that the former was the proper meaning of the term.[1] Whether Congress in 1980 intended that the broader reading of the phrase was the proper one is irrelevant; as of 1985, Congress made its views quite clear by adding subsection (d)(2)(D) above. I therefore agree that *Trident Marine* has been superseded by congressional enactment, but only in its definition of the term "position of the United States."

Since the amendments did not alter the meaning of the term "substantially justified," the majority erroneously depends on portions of the 1985 legislative history to argue that Congress changed the meaning of "substantially justified" to something more than reasonableness. The House Report accompanying the 1985 amendments declared that the meaning of "substantially

---

**1.** *Ashburn v. United States,* 740 F.2d 843, 849 (11th Cir.1984); *Boudin v. Thomas,* 732 F.2d 1107, 1116 (2d Cir.1984); *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1487 (10th Cir.1984); *Spencer v. NLRB,* 712 F.2d 539, 557 (D.C.Cir.1983); *Tyler Business Services, Inc. v. NLRB,* 695 F.2d 73, 75 (4th Cir.1982); *Broad Avenue Laundry and Tailoring v. United States,* 693 F.2d 1387, 1390–91 (Fed.Cir.1982).

justified" would be clarified by the amendments. H.R.Rep. No. 99–120, 99th Cong., 1st Sess. 11, *reprinted in* 1985 U.S. Code Cong. & Ad. News 132, 139. The report also noted its objection to decisions of various courts of appeals that had interpreted "substantially justified" to mean reasonableness:

> Because in 1980 Congress rejected a standard of "reasonably justified," in favor of "substantially justified," the test must be more than mere reasonableness.
>
> Especially puzzling, however, have been statements by some courts that an administrative decision may be substantially justified under the Act even if it must be reversed because it was arbitrary and capricious or was not supported by substantial evidence. Agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act. Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under the Act.

*Id.* at 9–10, 1985 U.S. Code Cong. & Ad. News at 138 (footnote omitted). As the majority notes, Congressmen Kindness, Moorehead, and Kastenmeier, and Senators Grassley and Thurmond, all rejected from the floor the committee report's statement that an agency action found unsupported by substantial evidence could not have been substantially justified except in extreme circumstances. The majority also correctly notes that the House Report's assertion regarding a standard higher than reasonableness was not challenged on the floor of either House. The appellant in his brief relies on the same legislative history. Appellant's brief at 12.

Not only is reliance on subsequent legislative history absolutely precluded by Supreme Court precedent, *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), but also the majority's selective and preferential treatment of

the 1985 legislative history disregards clearly established rules of statutory construction and the realities of the legislative process. In *Oscar Mayer & Co. v. Evans,* the question was whether the Age Discrimination in Employment Act [ADEA] mandated resort to state administrative procedures before the filing of a federal lawsuit. The plaintiff argued that resort to state procedures was optional despite previous judicial construction of the ADEA mandating preliminary resort to state processes. In support of his argument, plaintiff relied on the legislative history of amendments to the ADEA that did not affect the original pertinent language. In *Oscar Mayer,* the Supreme Court not only did not examine whether the purported legislative history accurately reflected the intent of Congress, but refused even to consider these documents. "Senate Report No. 95–493 was written eleven years after the ADEA was passed in 1967, and such '[l]egislative observations ... are in no sense part of the legislative history.' *United Airlines Inc. v. McMann,* 434 U.S. 192, 200 n. 7 [98 S.Ct. 444, 449 n. 7, 54 L.Ed.2d 402] (1977). 'It is the intent of the Congress that enacted [the section] ... that controls.' *Teamsters v. United States,* 431 U.S. 324, 354 n. 39 [97 S.Ct. 1843, 1864 n. 39, 52 L.Ed.2d 396] (1977)." 441 U.S. at 758, 99 S.Ct. at 2072.[2] "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960). *See Waterman S.S. Corp. v. United States,* 381 U.S. 252, 269, 85 S.Ct. 1389, 1398–99, 14 L.Ed.2d 370 (1965). More recently, the Court has noted that "even when it would otherwise be useful, subsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment." *Consumer Product Safety Commission v. GTE Sylvania,* 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980). Therefore, the "legis-

---

**2.** All of the Justices concurred in this portion of the opinion in *Oscar Mayer* concerning subsequent legislative history. The concurrences and dissents in that decision related only to the

discussion in Part III of the opinion that considered the meaning of the Age Discrimination in Employment Act.

lative history" offered by the appellant in this case is irrelevant to our inquiry.

Furthermore, *Oscar Mayer* and other Supreme Court precedent clearly establishes that where parties offer competing statutory interpretations, "[t]he starting point of our analysis ... must, of course, be the language of [the statute]. We assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" *Kosak v. United States,* 465 U.S. 848, 853, 104 S.Ct. 1519, 1523, 79 L.Ed.2d 860 (1984) (footnote and internal citations omitted). We begin with the language of the statute itself, *Bread Political Action Committee v. FEC,* 455 U.S. 577, 580, 102 S.Ct. 1235, 1237–38, 71 L.Ed.2d 432 (1982), and interpret it according to its plain language absent evidence of a contrary legislative intent. *United States v. Apfelbaum,* 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980). Only if the statutory language is unclear, must we examine the legislative history. *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984).

I believe that this court in *Trident Marine, supra,* in determining the meaning of the term "substantially justified," considered the statutory language and properly resorted to the legislative history from the time of the phrase's original enactment. As noted, "substantially justified" is a standard unique to this statute. Congress could have used the frequently and definitely construed "substantial evidence" standard or another term of similar clarity, but instead chose a different term. In these circumstances, this court correctly examined the relevant legislative history accompanying the initial enactment and interpreted the statute in accordance thereto, allowing the possibility for Congress to amend the statute if it intended otherwise. Since that time, Congress has not seen fit to alter the statutory language. Instead, we are asked to change our interpretation of the meaning of "substantially justified" on the basis of a committee report produced by a subsequent Congress whose amendments did not affect the language in question. I believe relevant Supreme

Court precedents preclude us from so doing.

Even if one rejects this argument that courts may not consider subsequent legislative history as affecting unamended statutory language, the majority improperly relies on selected portions of the legislative history of the 1985 amendments to support its assertion that the meaning of "substantially justified" was changed. Admittedly, the legislative history of the 1985 amendments is ambiguous. The Fifth Circuit stated in *Russell v. National Mediation Board,* 775 F.2d 1284, 1289 (5th Cir.1985):

> This legislative history is puzzling. The unchallenged portion of the House Report indicates that government action must be more than merely reasonable to be substantially justified. The cosponsors' comments during the floor debates, by contrast, indicate that an action may be substantially justified even though it is arbitrary and capricious. We see no way to harmonize these positions....

However, the presence of ambiguity does not allow a court to prefer certain portions of legislative history over other portions. Contrary to the majority, I see little reason to grant statements on the floor more weight than the House Report even though such statements may accord more with my own view. "The contemporaneous remarks of a sponsor of legislation are certainly not controlling in analyzing legislative history. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 118 [100 S.Ct. 2051, 2061, 64 L.Ed.2d 766] (1980); *Chrysler Corp. v. Brown,* 441 U.S. 281, 311 [99 S.Ct. 1705, 1722, 60 L.Ed.2d 208] (1979)." *Weinberger v. Rossi,* 456 U.S. 25, 35 n. 15, 102 S.Ct. 1510, 1517 n. 15, 71 L.Ed.2d 715 (1982). No basis exists for concluding that the standards of the sponsors should prevail over those of the House Report, or that other portions of that Report prevail because they were not rejected on the floor.

Furthermore, reliance on the House Report to resolve the ambiguity in the legislative history is particularly suspect in light of Judge (now Justice) Scalia's comments

concerning the same House Report with reference to a different issue under EAJA:

> I frankly doubt that it is ever reasonable to assume that the details, as opposed to the broad outlines of purpose, set forth in a committee report come to the attention of, much less are approved by, the house which enacts the committee's bill. And I think it is time for courts to become concerned about the fact that routine deference to the detail of committee reports, and the predictable expansion in that detail which routine deference has produced, are converting a system of judicial construction into a system of committee-staff prescription. But the authority of the committee report in the present case is even more suspect than usual. Where a committee-generated report deals with the meaning of a committee-generated text, one can at least surmise that *someone* selected these statutory words to convey this intended meaning. The portion of the report at issue here, however, comments upon language drafted in an earlier Congress, and reenacted, *unamended* so far as is relevant to the present point, in the 1985 law. We are supposed to believe that the legislative action recommended by the committee and adopted by the Congress, in order to resolve a difficult question of interpretation that had produced a conflict of the circuits … was *reenactment of the same language unchanged!* Such a supposition is absurd on its face.…

*Hirschey v. FERC,* 777 F.2d 1, 7–8 (D.C. Cir.1985) (Scalia, J., concurring) (emphasis in original) (footnote omitted). See also *Federal Election Commission v. Rose,* 806 F.2d 1081, 1090 (D.C.Cir.1986), which noted that legislative history at the committee level is deliberately manipulated "to achieve what likely cannot be won before Congress as a whole." These cases suggest that the House Report on the 1985

EAJA amendments may be inherently unreliable.

Finally, several circuits have construed the ambiguous legislative history of the 1985 amendments to lead to different results. Specifically relying upon this legislative history, the Federal Circuit held that substantial justification requires more than reasonableness. "The government must show that it has not 'persisted in pressing a tenuous factual or legal position, albeit one not wholly without foundation.'" *Gavette v. Office of Personnel Management,* 785 F.2d 1568, 1579 (Fed.Cir.1986), *quoting Gava v. United States,* 699 F.2d 1367, 1375 (Fed.Cir.1983) (Baldwin, J., dissenting). *See also Devine v. National Treasury Employees Union,* 805 F.2d 384, 386 (Fed.Cir. 1986); *L.G. Lefler, Inc. v. United States,* 801 F.2d 387, 388 (Fed.Cir.1986). Likewise, the Eleventh Circuit has held that "the test is actually more than mere reasonableness." *Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1497 (11th Cir.1986), *vacated in part on other grounds,* 804 F.2d 1573 (11th Cir.1986). In contrast, the Fifth and Seventh Circuits expressly retained a reasonableness standard after considering the 1985 amendments and "legislative history." *Russell v. National Mediation Board,* 775 F.2d 1284, 1289 (5th Cir.1985);[3] *Phil Smidt & Son, Inc. v. NLRB,* 810 F.2d 638, 642 n. 5 (1987).[4]

Two circuits have concluded that the standard remains one of reasonableness in light of the 1985 amendments, but these circuits did not discuss the 1985 legislative history. *United States v. Yoffe,* 775 F.2d 447, 450 (1st Cir.1985); *Weakley v. Bowen,* 803 F.2d 575, 577 (10th Cir.1986). Two circuits have also continued to apply a reasonableness standard without explicit reference to the 1985 amendments or their legislative history. *Sierra Club v. United States Army Corps of Engineers,* 776 F.2d 383, 393 (2d Cir.1985); *League of Women*

---

**3.** *See also Arasto v. O'Neil,* 803 F.2d 187, 189 (5th Cir.1986) (per curiam); *Herron v. Bowen,* 788 F.2d 1127, 1130 (5th Cir.1986) (per curiam); *USLIFE Title Insurance Co. v. Harbison,* 784 F.2d 1238, 1242 (5th Cir.1986) (adhering to reasonableness standard).

**4.** The *Smidt* case followed a previous decision in which the court had applied a reasonableness standard without reference to the 1985 amendments or their legislative history. *United States v. Kemper Money Market Fund, Inc.,* 781 F.2d 1268, 1276 (7th Cir.1986).

*Voters of California v. FCC,* 798 F.2d 1255, 1257 (9th Cir.1986).[5]

The conflict and confusion in circuit law shown by these cases can only spawn increasing problems for the judges in our circuit if we allow ourselves to be drawn into the morass of arguing contradictory legislative history. The majority may be well-intentioned in splitting hairs, but its standard will create confusion. Nothing in the statute indicates that this is the proper standard, nor will the majority view assist beleaguered district judges who must decide, under this frequently litigated statute, whether the reasonableness standard or some more nebulous "more than reasonable" test is appropriate. *See Weber v. Weinberger,* 651 F.Supp. 1379 (W.D.Mich. 1987) (noting circuit split and legislative history and resolving issue by deciding that government position failed to satisfy even the reasonableness test). Perhaps it is enough to say to the majority that we would "rather bear those ills we have, Than fly to others that we know not of." Shakespeare, *Hamlet,* III.1.81–82.

As the majority states, Senator Grassley said that "where the agency is found by a court to be arbitrary and capricious or where there is little or no factual support for the agency action, the Government—as a practical matter—has its work cut out for it to prove substantial justification." Maj. op. at 1241. While this problem exists, it is not solved but rather obfuscated by the majority's creation of a new and uncertain standard that will cause difficulty both in application and upon review. By contrast, as Judge Bownes noted when the First Circuit adopted the reasonableness test:

Not only does the unanimity of eleven circuits on this definition impress us, but we think it makes more sense and is easier to apply than the test of the D.C. Circuit ["more than reasonableness"]. The concept of reasonableness is one with which judges and lawyers alike are familiar. The test breaks down into three parts: did the government have a reasonable basis for the facts alleged; did it have a reasonable basis in law for the theories advanced; and did the facts support its theory. This represents a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous.

*United States v. Yoffe,* 775 F.2d 447, 450 (1st Cir.1985) (citations omitted).

Even if the majority's new standard were workable, I cannot condone its departure from *Trident Marine* without the required recourse to *en banc* reconsideration. The *Trident Marine* standard derives from legislative history at the time this unamended language was adopted. Presumably it reflected a legislative judgment balancing the equitable interests of citizens and the government's need for flexibility in the exercise of its discretion. It is true that in this case the result reached by the majority has surface appeal, for it awards attorneys fees to someone who is challenging what he believes to be arbitrary government action, and which by all accounts was action not based upon substantial evidence. In my opinion, however, the majority result comes at too high a price by offending principles of *stare decisis* and ignoring the plain command of *Oscar Mayer, supra.*

---

**5.** Three circuits have reached internally inconsistent results. The District of Columbia, originally the only circuit to conclude before 1985 that "substantially justified" meant something more than reasonableness, adhered to that view in *Federal Election Commission v. Rose,* 806 F.2d 1081, 1089 (D.C.Cir.1986). The court viewed the 1985 legislative history as irrelevant, as the standard had always been one greater than reasonableness. However, only ten days after the decision in *Rose,* the District of Columbia Circuit adopted a reasonableness standard without mentioning *Rose. Battles Farm Co. v. Pierce,* 806 F.2d 1098, 1101–02 n. 11 (D.C.Cir. 1986). The Third and Eighth Circuits have sim-

ilarly reached inconsistent results. *Lee v. Johnson,* 799 F.2d 31, 38 n. 7 (3d Cir.1986) (government position must be more than merely reasonable); *Brinker v. Guiffrida,* 798 F.2d 661, 664 (3d Cir.1986) ("[s]ubstantial justification is essentially a standard of reasonableness...."); *United States v. 1,378.65 Acres of Land,* 794 F.2d 1313, 1317–18 & n. 2 (8th Cir.1986) (Congress intended a standard greater than reasonableness); *Derickson Company, Inc. v. NLRB,* 774 F.2d 229, 232 (8th Cir.1985) (test was whether the agency's position was reasonable). *See also Granville House v. Department of HEW,* 796 F.2d 1046, 1049 (8th Cir.1986).

Since appellant can rely neither upon the 1985 amendments nor the purported legislative history thereof, the portion of *Trident Marine* concerning the definition of "substantially justified" remains good law. To the extent Congress disagrees, it can alter that rule through the same constitutionally mandated process by which it changed our circuit's holding defining the "position of the United States." Until such time, I would reaffirm *Trident Marine* despite Congress' 1985 actions, and I now proceed to apply that standard to these facts.

A district court's denial of attorneys fees under the EAJA is reviewed under an abuse of discretion standard. *Westerman, Inc. v. NLRB*, 749 F.2d 14, 17 (6th Cir. 1984). Under this standard, we accept the facts of the district court unless clearly erroneous, and give *de novo* review to the district court's evaluation of the reasonableness of the government's position. *Id.* Although the district court did not comply with *Trident Marine's* holding that "position of the United States" means only its litigating position and instead considered whether the "decision of the Secretary" was substantially justified, Memorandum Opinion at 2, its approach was consistent with the congressional decision to amend subsection (d)(2)(D) as noted above and hence is, in my view, proper under the 1985 amendments.

The record indicates that although the Secretary's position was unsupported by substantial evidence on the record as a whole, it was based on a reasonable belief in fact and law that the appellant was not disabled. The ALJ, based on appellant's hearing testimony, determined that appellant could read and watch television with fairly good vision if he turned his head to the right. App. 71, 94. Since appellant's treating physician Riherd noted that appellant's major problem was double vision rather than neck pain, and prescribed con-

servative further range of motion exercises accompanied by removal of appellant's neck collar, App. 213–14, and since nonprescription Tylenol by appellant's own testimony helped relieve his pain, App. 97, 143, the ALJ had a reasonable basis to determine that appellant's claims of severe pain were not credible. Such a determination would be entitled to great weight. *Houston v. Secretary of HHS*, 736 F.2d 365, 367 (6th Cir.1984). These findings also would lend support to the ALJ's conclusion that the pain was remediable and not so constant that it might preclude appellant from engaging in substantial gainful activity.

Likewise, the ALJ noted that appellant alleged no pulmonary condition at his hearing, and that his fractures were healing well. App. 73. These conclusions are supported by Dr. O'Bryan's consultation note that appellant left the hospital with few residual problems. App. 208. The ALJ's determination that appellant could perform the full range of sedentary work is supported by treating physician Binegar's prescribed limitations only of avoiding heavy equipment and tasks requiring binocular vision, App. 220. Further, appellant did not make a follow-up visit with Dr. Riherd until two months after he was scheduled, as noted by the ALJ at App. 73, testified that he can sit for two or three hours and can sit or stand for a prolonged period of twelve hours, App. 104–05, and had gained weight and "continues to do more and more with respect to activities" according the Dr. O'Bryan's consultation note, App. 208.

Upon consideration of all these facts, and the ALJ's proper finding that, at age 40, appellant is a "younger individual," App. 75, 20 C.F.R. §§ 404.1563 and 416.963, I believe that the Secretary's decision and litigating positions were supported by a reasonable basis in fact and law. I would therefore affirm the district court's denial of attorney fees.[6]

**6.** I do not understand this case to present the question of the relationship of the EAJA to the award of attorney fees under 42 U.S.C. § 406(b)(1), a question which has produced significant confusion. *Compare Wolverton v. Heckler*, 726 F.2d 580 (9th Cir.1984), and *Ber-*

*man v. Schweiker*, 531 F.Supp. 1149 (N.D.Ill. 1982), *aff'd*, 713 F.2d 1290 (7th Cir.1983) (awards may be made under both sections) *with Dunn v. Heckler*, 614 F.Supp. 45, 51 (E.D.N.C. 1985) (award under EAJA can only be for work done in court proceedings, award under

§ 406(b)(1) can only be for work done at the administrative level, with total fees for both levels limited to 25% of the award) *and Bohn v. Heckler,* 613 F.Supp. 232 (N.D.Ill.1985) (EAJA does not apply to administrative proceedings, but no 25% limit on combined fees at both levels noted) *and Lovell v. Heckler,* 606 F.Supp. 621, 624 (M.D.Pa.1985) (when attorney fees are awarded under EAJA, no fees are to be awarded under § 406(b)(1)).